NYMAN v. DETROIT POLICE PENSION COMMITTEE.

1. MUNICIPAL CORPORATIONS—POLICE PENSION COMMITTEE—MANDAMUS—COURTS—CERTIORARI—EVIDENCE.

On appeal in nature of certiorari reviewing circuit court order granting writ of mandamus ordering defendant police pension committee to grant a pension to police officer's widow, evidence *held,* sufficient to sustain committee's denial of petition for pension (Detroit Charter, title 4, chap. 21, § 19).

2. SAME—POLICE PENSION COMMITTEE—FRAUD.

In the absence of arbitrary or capricious action or fraud on part of police pension committee, acting under provisions of city charter, in denying petition by police officer's widow for pension, a circuit court may not substitute his own judgment for that of the committee, the committee's action being final under such circumstances (Detroit Charter, title 4, chap. 21, § 19).

3. SAME—REMAND BY COURT TO POLICE PENSION COMMITTEE—REHEARING—RECONSIDERATION.

Upon remand by court to police pension committee of proceeding by police officer's widow to obtain a pension from home-rule city through such committee, where all the witnesses were available, personnel of the committee was completely changed and no stenographic report made of the testimony taken at the first hearing, it was not beyond the power of the committee to hold a rehearing in the nature of a new trial rather than merely reconsider evidence previously presented (Detroit Charter, title 4, chap. 21, § 19).

4. OFFICERS — REHEARING — RECONSIDERATION — DISCRETION —REMAND FROM COURT.

When a cause is remanded by a court to an administrative tribunal, the latter is vested with discretion to decide whether to conduct only a reconsideration or a full rehearing.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted June 2, 1942. (Calendar No. 41,898.) Decided September 8, 1942.

Petition by Bessie Nyman for a writ of mandamus to compel Edward J. Jeffries, Jr., Mayor, and others, constituting the Police Pension Committee, to pay a pension. Defendants review order granting writ of mandamus by appeal in the nature of certiorari. Reversed.

*Frank G. Schemanske,* for plaintiff.

*Paul E. Krause,* Corporation Counsel, and *Nathaniel H. Goldstick* and *Bert R. Sogge,* Assistants Corporation Counsel, for defendants.

BUTZEL, J. Defendants prosecute this appeal in the nature of certiorari from an order of mandamus ordering the police pension committee of the city of Detroit to grant a pension to the widow and daughter of George Nyman, a deceased police officer. The committee after a full hearing had determined that the officer did not die from the effect of injuries received in the performance of his duties, and that, therefore, plaintiff was not entitled to a pension.

George Nyman, plaintiff's decedent, became a patrolman on November 19, 1913. On August 1, 1922, he was promoted to the rank of detective, and, on August 1, 1927, to the rank of sergeant of detectives, which position he held until his death on April 9, 1936. He enjoyed good health until sometime in December, 1935, when, according to his widow's claim, he received a shock to his nervous system followed by a heart ailment as a result of an attempt to make an arrest in which shots were exchanged. On January 17, 1936, he consulted Dr. McKean who found, according to the history decedent gave at the time, that for four weeks decedent had been suffering from attacks of pres-

sure below the sternum accompanied by shortness of breath. One of the attacks had necessitated hospital treatment. The doctor diagnosed the case as coronary arteriosclerosis. He warned the patient to avoid any sort of activity involving physical or emotional stress. The doctor saw him on several occasions during each of the succeeding months. Decedent was also treated by Dr. Wood, a member of the police department medical staff. Decedent had been absent from his work several days and, according to the doctor's testimony, he could have had retirement at half pay, if he had so desired. He was given a light job at full pay instead. For several days prior to April 7, 1936, decedent was instructed to guard one Cyril Dempsey, a patient at the hospital. Dempsey had been shot by some thugs, three bullets having entered his neck, two on the left side immediately underneath the skin, and one imbedded an inch deep on the right side. It was decedent's duty to take possession of the extracted bullets so that they could be used as evidence at the proper time. It is claimed by plaintiff that decedent was in the operating room on April 7, 1936, when the bullets were extracted, and that the effect of witnessing the extraction of the bullets caused such an emotional strain as to precipitate the heart attack that caused his death. The operation was a simple one, a local anaesthesia being used. The patient remained in the operating room only 20 minutes and was able to leave the hospital the following day.

For the purposes of this case, we assume that decedent was in the operating room though appellants claim there was no proper testimony to that effect. According to the official records of the police department decedent worked the balance of April 7, 1936, and the following day, April 8th. At

12:20 a.m. on the morning of April 9, 1936, he suffered a coronary occlusion. He was taken to Harper hospital four hours later and he died that evening. In the death certificate, Dr. Johnson, who is associated with Dr. McKean, gave as the principal cause of death coronary occlusion, duration 20 hours, and as a contributory cause, coronary sclerosis, eight months.

Plaintiff first presented a petition to the Detroit police pension committee for a pension on behalf of herself and 13-year old daughter, in accordance with the charter of the city of Detroit, title 4, chap. 21, § 19, as amended, which would entitle them to such compensation provided the police officer died "from the effect of injuries received while in the performance of duty." Plaintiff claims that the injuries received while in the course of duty were aggravated by an emotional strain which decedent underwent while witnessing the operation at the hospital, and that his death was caused thereby. Testimony was taken before the police pension committee, the expert medical testimony being in conflict. On motion the medical question was referred to the fire department medical board of review with the understanding that the committee be guided in its final decision by such board's conclusions. Upon receiving the latter's report, the plaintiff's petition was denied. Upon the denial of the petition, plaintiff brought mandamus to compel the board to allow the pension, she claiming that the delegation of its quasi-judicial power by the committee to the fire department medical board of review was improper and illegal.

The circuit judge treated the case as a trial *de novo*, took testimony and issued a writ of mandamus, thus entirely supplanting the police pension committee. Before issuing the writ, however, he

gave the committee an opportunity to conduct a new hearing. Plaintiff did not bring any witnesses to the committee hearing first scheduled, as her understanding was that such hearing was to be confined to the evidence presented to the committee on its first hearing, although nearly half the membership of the committee had changed since then, and no written transcript of the testimony had been taken. The committee on this occasion again ruled against plaintiff, the only witnesses being those for the police department. Later the circuit judge granted the committee a second opportunity to rehear the case, it being explicitly understood that such rehearing would be in the nature of a new trial. When this hearing was held on June 4 and 11, 1941, the personnel of the committee had changed entirely since the first hearing before the committee. Testimony was taken. There was not much dispute as to facts. The main question was, assuming that decedent did witness the short operation at the hospital, whether he had died from the effect of injuries while in the performance of duty. Dr. McKean, who had attended decedent in his lifetime, testified that, owing to the fact that the coronary occlusion followed so soon after decedent attended the operation and that witnessing an operation of any kind on a living person frequently causes an emotional strain, decedent came to his death from injuries while in the performance of his duties. Two doctors connected with the police department testified, however, that even if decedent did witness the short operation, he did not sustain an injury thereby so as to cause his death. It was shown that decedent was an experienced police officer, had been in shooting affrays, had been cited for bravery, and that, after being put on light work with full pay, the witnessing of a slight opera-

tion by a person in decedent's condition would not cause an injury that would precipitate death. It was shown that decedent had been able to work the balance of the day after he saw the operation and the following day.

We shall not discuss the testimony except to state that it fully sustains the committee in its third and final denial of plaintiff's petition for a pension. The committee was neither arbitrary nor capricious, nor did it act fraudulently, in coming to its determination. Notwithstanding this fact, the trial judge on reading the transcript of the testimony taken before the committee issued a writ of mandamus ordering the committee to grant a pension. He took upon himself the performance of the duties of the committee and substituted his own judgment for that of the committee. This, of course, he had no right to do. The determination of the committee, being neither arbitrary, capricious nor fraudulent, was final.

Plaintiff, however, claims that, when the case was remanded to the police pension committee, the latter was obliged to reconsider the evidence previously presented before it, and was without authority to hold a rehearing in the nature of a new trial. The personnel of the committee had entirely changed. There is not even a stenographic report of the testimony taken at the first hearing. The only fair and practical manner in which the case could be considered by the committee was by taking testimony *de novo*. All the witnesses were still available. When a cause is remanded by a court to an administrative tribunal, the latter is vested with discretion to decide whether to conduct only a reconsideration or a full rehearing. *Federal Communications Commission* v. *Pottsville Broadcasting Co.*, 309 U. S. 134 (60 Sup. Ct. 437, 84 L. Ed. 656);

*Fly* v. *Heitmeyer,* 309 U. S. 146 (60 Sup. Ct. 443, 84 L. Ed. 664). In view of our decision other questions raised by appellant need not be considered.

The judgment of the circuit court is reversed, with costs to defendants.

Chandler, C. J., and Boyles, North, Starr, Bushnell, and Sharpe, JJ., concurred. Wiest, J., did not sit.