V. H. HARDING, *et al.*

*v.*

BOARD OF ZONING APPEALS OF THE CITY OF MORGANTOWN,

*et al.*

(No. 13268)

Decided November 4, 1975.

*A. Blake Billingslea* for appellants.

*Frank J. DePond* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from the final judgment of the Circuit Court of Monongalia County, which affirmed the decision of the Board of Zoning Appeals of the City of Morgantown in its denial of a zoning variance to appellants.

In February 1970, the appellant Lillian Harding filed an application with the Board of Zoning Appeals requesting a conditional use to add two additional apartments to the ground level of a building owned by her and V. H. Harding in which two apartments already existed. The apartment building was located in an R-2 Zoning District. The zone R-2 allows for "primarily" single and two-family residences, although a multi-family dwelling is permitted as a conditional use. The Zoning Board referred the matter to the Morgantown Planning Commission which approved the Hardings' application, concluding that the conditional use requested by them would not be adverse to the Morgantown Comprehensive Plan. On May 20, 1970, a public hearing was held by the Board of Zoning Appeals, at the conclusion of which the Board granted appellants the requested conditional use. Pursuant to the building permit and Certificate of Occupancy which they were granted by the City of Morgantown on May 21, 1970, appellants remodeled the ground floor of their building, constructed two more apartments, and rented the apartments to students.

The Board's decision was affirmed, upon a writ of *certiorari*, by order on September 17, 1970 by the Circuit Court of Monongalia County. On March 8, 1971, this Court granted the petition of William H. Miernyk, *et al.* for a writ of error in this matter. Dr. Miernyk assigned as error, in that proceeding, the failure of the Board of Zoning Appeals to make a mandatory finding of fact as required by Section 23, Subsection H of the Zoning Ordinance of the City of Morgantown.

This Court, in *Miernyk v. Board of Zoning Apeals*, 155 W. Va. 143, 181 S.E.2d 681 (1971), reversed the decision of the Circuit Court in the following language:

"Inasmuch as the board of zoning appeals did not comply with subsection H of Section 23 by making the four written findings required therein, it is the view of this Court that the judgment of the Circuit Court of Monongalia County refusing upon certiorari to disturb the decision of the board of zoning appeals was erroneous and, therefore, the motion to reverse is granted. It is further the view of this Court that this case be remanded to the Circuit Court of Monongalia County with directions to also remand the case to the board of zoning appeals directing the board to comply with the mandatory provisions of subsection H of Section 23." *Id.* at 148-49.

Section 23, Subsection H of the Ordinance provides:

"No variance in the application of the provisions of this ordinance shall be made by the Board relating to buildings, land or premises now existing or to be constructed, unless after a public hearing, the Board shall find:"

The provisions then list specific findings that must be made by the Board;[1] it was the Board's failure to make these findings that occasioned the reversal of the decision of the circuit court in the first case before the Court.

Pursuant to the decision of this Court, a hearing was held to determine whether a variance should be granted on September 27, 1971, in which, immediately at the close of testimony, the Board went into executive session and rendered a decision. Reversing its ruling of May 20, 1970, the Board denied appellants' application and consequently voided the building permit and Certificate of Occupancy previously granted appellants by the City of Morgantown. From the Board's Finding of Fact and Final Order of October 18, 1971, the appellants applied for a second writ of *certiorari* in the Circuit Court of Monongalia County. That court granted the writ but,

---

[1]*See, Miernyk v. Board of Zoning Appeals, supra,* at 146-47 of the West Virginia Report.

later, affirmed the Board's decision by the final order which is the genesis for this appeal.

The initial issue of concern to the Court in *Miernyk v. Board of Zoning Appeals, supra,* was to determine the proper meaning associated with the terms, "variance" and "conditional use." At the outset of its examination, the Court stated:

> "Counsel for the defendants in error in brief and oral argument contended vigorously that there is a difference between a 'variance' and a 'conditional use' and that what their client sought and received was a conditional use which did not require the board of zoning appeals to make the findings required of it where a variance from the zoning ordinance is sought ...." *Id.* at 145 of the West Virginia Report.

After reviewing the Zoning Ordinance, the Court concluded that "[i]t seems patently clear that a conditional use is a 'variance in the application of the provisions of this ordinance.'" *Id.* at 147-48 of the West Virginia Report.

This Court is compelled to overrule *Miernyk v. Board of Zoning Appeals,* 155 W. Va. 143, 181 S.E.2d 681 (1971), with respect to its obliteration of valid distinctions between a conditional use and a variance. A conditional use is not synonymous with a variance; it is another, less frequently used, term for a "special exception."

In A. H. Rathkopf, *The Law of Zoning and Planning* 54-1 (3rd ed. 1972), Chapter 54 is entitled "Conditional Uses or Special Exception Permits;" footnote one of this chapter explains why it is so entitled:

> "Although, in this chapter we adhere to ordinary terminology and use the term 'special exception use' or 'special exception permit,' it should be pointed out in the beginning that this term is a misnomer. As will be made clear in this chapter, no 'exception' is made to the provisions of the ordinance in permitting such use; the permit granted is for a use specifically provided for

in the ordinance in the case in which conditions, legislatively prescribed, are also found. A much more accurate description would be 'conditional use' permit." *Id.*

Pertinent to the precise problem before this Court, Rathkopf quotes from two appellate decisions to explain the nature of a conditional use or special exception and to illustrate its distinction from a variance. At page 54–6, Rathkopf restates "excellent language" employed in *Syosset Holding Corp. v. Schlimm*, 15 Misc.2d 10, 159 N.Y.S.2d 88 (1956):

> " 'This is not an application for a use variance under section 179-b of the Village Law but is an application for a special exception permit as provided for in the Zoning Ordinance. There is a substantial difference between the two. The granting of a *special exception* is apparently not too generally understood. It does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes under stated conditions. In short, a special exception *is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist.*
>
> " 'A special exception, unlike a variance, does not involve the varying of the ordinance, but rather compliance with it. * * * The issuance of a special exception permit, on the other hand, is a duty imposed upon the Board of Appeals by the terms of the Zoning Ordinance, which duty is to be performed in the manner therein provided.' "

Furthermore, Rathkopf quotes from *Tullo v. Millburn Township*, 54 N.J.Super. 483 (App.Div. 1959):

> "The term ("special exception") might well be said to be a misnomer. "Special use" or "special use permits" would be more accurate. The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropri-

ate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not at every or any location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone. If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use.... The point is that such special uses are permissive in the particular zone under the ordinance and neither non-conforming nor akin to a variance. The latter must be especially clearly distinguished." *Id.*

For another discussion of this distinction, including case citations, *see*, Yokley, *Zoning Law and Practice* §15-4 (3rd ed. 1965).

The West Virginia Legislature was apparently aware of the distinction when it enacted *W. Va. Code* 1931, 8-24-55, as amended, which, *inter alia*, gives boards of zoning appeals separate authority to:

"(3) Hear and decide *special exceptions* to the terms of the ordinance upon which the board is required to act under the ordinance; and

"(4) Authorize upon appeal in specific cases such *variance* from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (Emphasis supplied).

Contrary to the holding in *Miernyk v. Board of Zoning Appeals, supra,* the Morgantown City Council likewise recognized a distinction between a conditional use and a variance when it enacted Section 23.E of the Zoning Ordinance which provides, in language very similar to *W. Va. Code* 1931, 8-24-55, as amended, that the Board shall have the power and duty to:

> "(2) Hear and decide on permits for *conditional uses,* development plans or other uses upon which the Board is required to act under this ordinance.
>
> "(3) Authorize upon appeal in specific cases such *variances* from the terms of this ordinance as will not be contrary to the public interest, where owing to special conditions, fully demonstrated on the basis of the facts presented, a literal enforcement of the provisions of this ordinance will result in unnecessary hardship and so that the spirit of this ordinance shall be observed and substantial justice done. (Emphasis supplied).

The Ordinance also sets out a separate section, §19, entitled CONDITIONAL USES AND PROCEDURE, which explains when and how a conditional use may be granted. Section 19 provides, *inter alia:*

> "A. USES PERMITTED
> The Conditional Uses listed in Table 11, and their accessory buildings and uses, may be permitted by the Board in the District indicated in accordance with the procedures set forth in this section.
>
> "B. PROCEDURE
> Upon the receipt of an application for a Conditional Use by the Board, it shall be referred to the [Morgantown Planning] Commission for investigation as to the manner in which the proposed location and character of the Conditional Use will affect the Comprehensive Plan. The Commission shall report the results of its study of the proposal to the

Board, and, if the report be favorable, the Board, after public notice and hearing may grant the permit, including the imposition of such conditions of use as the Board deems essential to insure that the Conditional Use is consistent with the spirit, purpose and intent of this ordinance."

One of the conditional uses listed in Table 11 is "multi-family dwelling" which is specifically permitted under R-1, R-2, and B-2 Districts. As previously stated, the Harding building, which was converted from two apartments to four apartments, was located in an R-2 Zoning District. Under RESIDENCE DISTRICTS in Section 13 of the Ordinance, an R-2 District is described in the following manner:

"This is primarily a single-family and two-family residence District. It includes the major portion of the residential section of the City *and multi-family dwellings are permitted as conditional uses*. Requirements for minimum lot size, ground floor area of structures and maximum height of buildings are somewhat less stringent than the requirements of the R1 District." (Emphasis supplied).

The language is explicit: multi-family dwellings, which are defined as "building(s) designed for or occupied by three or more families, exclusively for dwelling purposes," (e.g. a building with four apartments) are permitted under the Ordinance as conditional uses. There is no mention of variances and, consequently, there is no need for an applicant to seek approval for something which varies from the terms of the Ordinance.

Therefore, in seeking a conditional use, the Hardings did not have to satisfy the more stringent variance findings and requirements found in Section 23.H of the Ordinance. Since the Court in *Miernyk* was incorrect in "directing the board to comply with the mandatory provisions of subsection H of Section 23," (*Id.* at 149 of the West Virginia Report), the Morgantown Board of

Zoning Appeals applied an erroneous standard in making its decision not to grant Hardings a variance. Thus, the circuit court's order affirming the Board's decision must be reversed, because as stated in *Wolfe v. Forbes*, _____ W. Va. _____, 217 S.E.2d 899 (1975):

> "While on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction." *Syllabus* point 5., *Id.*

We do believe that the general holding in *Miernyk* was correct, however, in requiring the Board of Zoning Appeals to make written findings of fact. Although the Ordinance explicitly provides for mandatory findings of fact whenever a variance is applied for, and is silent in regard to the approval of conditional uses, the rationale for requiring such findings is the same whether a variance or conditional use is sought:

> "Without such findings it would not be possible for the circuit court upon certiorari or this Court upon writ of error to determine whether the conditional use sought by the applicant before the board violated any of the conditions required before the granting of such a conditional use. In other words, these review procedures would be worthless if it could be said that written findings are not necessary, for there would be nothing to review . . ." *Miernyk, supra,* at 148.

The general rule with respect to expressing such findings is stated in Rathkopf, *supra:*

> "Where the power to pass upon special exception uses has been delegated to an administrative body, the same formalities are required as where such administrative body is acting upon an application for a variance. That is to say, the administrative body must set forth in its return the factual basis of its determination in order

that the court upon review may determine whether the decision of the Board conforms to the standards prescribed in the ordinance for the particular action." *Id.* at 54-50.

In applying this rule, we are of the opinion that *W. Va. Code* 1931, 8-24-59, as amended, and Section 23.G of the Ordinance which provide for review by *certiorari* of all board of zoning appeals' decisions, necessarily implies that a board also is required to make written findings of fact in deciding to grant or deny a conditional use permit.

The procedure to be followed in considering a conditional use permit is set out in Section 19.B, *supra*, of the Zoning Ordinance. In accordance with that section, the appellants' original application for a conditional use was referred to the Morgantown Planning Commission for investigation as to how it would affect the Comprehensive Plan. The Commission reported that the conditional use requested by the Hardings would not be adverse to the Morgantown Comprehensive Plan. A public hearing was held and the Board granted appellant's requested conditional use. But in making that determination, the Board should have made written findings of fact indicating whether the particular conditional use applied for was "consistent with the spirit, purpose and intent of this ordinance", as stated in Section 19.B of the Ordinance. The general purpose and intent of the Zoning Ordinance is set out in the preamble of the Ordinance, which states that the Ordinance was enacted:

"[F]or the purpose of promoting the health, safety, morals and general welfare of the inhabitants of said City by lessening congestion in the streets, securing safety from fire, panic and other dangers, providing adequate light and air, preventing the overcrowding of land, avoiding undue congestion of population, facilitating the adequate provision of transportation, water, sewerage, schools, parks and other public requirements and by other means in accordance with a comprehensive plan and with a view to conserving the value of buildings and encouraging the

most appropriate use of land throughout the municipality and to regulate and restrict the height, number of stories, size and general character of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes, . . . ."

Furthermore, Tables 1 and 2 of the Ordinance list specific minimum requirements for residential uses and for dwellings to insure that the general purpose of the Ordinance is complied with. Their standards require of applicants for multi-family dwellings in R-2 zones: (1) That the lot size be a minimum of 3,000 square feet; (2) that the lot width be a minimum of 60 feet; (3) that the building height not exceed 35 feet; (4) that the minimum front yard be 25 feet in depth; (5) that the minimum side yard average 10% of the total in width; (6) that the minimum rear yard be 25 feet in depth; (7) that the building ground floor area comprise a minimum of 960 square feet plus 400 square feet; (8) that the building not cover more than 35% of the lot area; and (9) that automobile. parking spaces be provided at a minimum of one per each dwelling unit on the lot.

Whether the original granting of the conditional use to the appellants was compatible with the general purpose and spirit of the Ordinance and satisfied its minimum building standards and requirements is not apparent to this Court because no findings of fact were made by the Board. Thus, we must once again remand this case to the circuit court with directions to also remand the case to the Board of Zoning Appeals, directing that the Board make the requisite findings of fact. In doing so, we reiterate that the variance standards contained in Section 23, Subsection H are not to be applied by the Board, because neither the statute nor the Ordinance places such a burden upon the appellants.

The appellants have assigned a number of errors to the circuit court's judgment affirming the Board of Zon-

ing Appeal's decision, but, in view of our overruling of *Miernyk, supra,* only two issues remain relevant:

(1) Whether the Board of Zoning Appeals erred in conducting an entirely new hearing on appellants' application on remand from this Court's ruling in *Miernyk v. Board of Zoning Appeals, supra?*

(2) Whether the appellants were deprived of a substantial vested right by the Board's most recent decision to deny the conditional use inasmuch as the Board originally approved their application and the City of Morgantown previously granted them a building permit and Certificate of Occupancy in 1970?

With respect to the first issue, appellants contend that the Board was without power to conduct a rehearing in the nature of a new trial. They suggest that this Court's direction in *Miernyk,* at 148-49 of the West Virginia Report, to remand "to the Circuit Court of Monongalia County with directions to also remand the case to the board of zoning appeals directing the board to comply with the mandatory provisions of Section 23," i.e. to make specific findings of fact before granting a variance, obliges the Board to reconsider only the evidence originally presented to it.

In *Mustard v. Bluefield,* 130 W. Va. 763, 45 S.E.2d 326 (1947) and very recently in *Wolfe v. Forbes, supra,* this Court recognized the general rule that a board, after making a final determination upon an application for a variance, has no authority to reopen a proceeding or to grant a rehearing of its action, in the absence of new facts, etc. We have not considered, however, the different questions of what authority a board of zoning appeals possesses on remand from a reviewing court after determination of error. Other jurisdictions have generally held that a court may either authorize full reconsideration on remand or impose reasonable limitations on an agency's discretion and that, where no limitations are imposed, an agency is left free on reconsideration to exercise the full discretion delegated to it by the legisla-

tive body. *See*, 73 C.J.S. *Public Administrative Bodies and Procedure* §241 (1965); *Bernstein v. Board of Appeals, Village of Matinecock*, 60 Misc.2d 470, 302 N.Y.S.2d 141 (1969), and *Adams v. City of Anadarko*, 202 Okl. 72, 210 P.2d 151 (1949).

Significant to our consideration here are the facts that (1) while this Court directed the Board to make specific findings of fact, it did not expressly limit the Board's discretionary powers; (2) the Board in 1971 was constituted with members who were not on the Board when the variance was granted in 1970; (3) a transcript of the evidence presented at the original hearing was not preserved; and (4) the interested witnesses were still available. Under similar circumstances the Michigan Supreme Court in *Nyman v. Jeffries*, 302 Mich. 520, 5 N.W.2d 449 (1942) held:

> "The only fair and practical manner in which the case could be considered by the committee was by taking testimony de novo .... When a cause is remanded by a court to an administrative tribunal, the latter is vested with discretion to decide whether to conduct only a reconsideration or a full rehearing. *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656; *Fly v. Heitmeyer*, 309 U.S. 146, 60 S.Ct. 443, 84 L.Ed. 664." *Id.* at 451 of the North Western Reporter.

We hold that, under the circumstances, it was not improper for the Board of Zoning Appeals upon remand to conduct an entirely new hearing on the appellants' application for a conditional use. Nor do we impose any restrictions upon the Board's discretion in handling this case on remand.

As to the second issue, this Court is of the opinion that the appellants were not deprived of a substantial vested right by the Board's contrary decision in 1971 to deny the conditional use permit. The authorities upon which appellants rely in their brief deal with the granting or revoking of building permits by subsequent legis-

lative amendments. *See e.g., City of Omaha v. Gliss-mann,* 151 Neb. 895, 39 N.W.2d 828 (1940) and numerous cases cited therein. In the present case, we are concerned with the issuance and subsequent revocation of a permit wholly by administrative action. The appellants knew or should have known that anyone aggrieved by a decision by the Board of Zoning Appeals could appeal by writ of *certiorari* to the Circuit Court. The appellants were well aware of the appeal taken and yet chose to go forward with the construction to convert their two-apartment building into four apartments. Appellants were certainly entitled to do so. *W. Va. Code* 1931, 8-24-62, as amended, expressly provides that the allowance of a writ of *certiorari* does not stay work on the premises affected by the decision of the board to be reviewed; this provision, however, does not guarantee that the board's decision was correct or that an issued building permit was valid and permanent. Appellants proceeded at their own peril in incurring expenditures in reliance on the challenged permit. *See, State v. Board of Appeals,* 21 Wis.2d 516, 124 N.W.2d 809 (1963); *Schechter v. Zoning Board of Adjustment of Hampton,* 395 Pa. 310, 149 A.2d 28 (1959); *In re Riccardi's Appeal,* 393 Pa. 337, 142 A.2d 289 (1958).

For the reasons expressed, the order of the Circuit Court of Monongalia County is reversed and the case is remanded for disposition consistent with this opinion.

*Reversed and remanded with directions.*