**L.M. EVERHART CONSTRUCTION, INCORPORATED, a West Virginia corporation, Plaintiff–Appellee,**

v.

**The JEFFERSON COUNTY PLANNING COMMISSION, a municipal corporation, Defendant–Appellant,**

and

**Paul J. Raco, Director of Planning of the Jefferson County Planning Commission; H. Richard Flaherty; Robert N. Warren; Cambell E. Tabb; Betty Braxton; Scott Coyle; Charles Lutman; Robert L. Mason; D. Lee Morgan; William Senseny; G. Page Wright, Jr.; Charles B. Clendening, III, Defendants.**

No. 92–2168.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1993.

Decided July 29, 1993.

Charles F. Printz, Jr., Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, argued for defendant-appellant.

Michael Lee Scales, Greenberg & Scales, Martinsburg, WV, argued for plaintiff-appellee.

Before MURNAGHAN and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

WILLIAMS, Circuit Judge:

■ At issue in this case is whether the Jefferson County Planning Commission deprived L.M. Everhart Construction, Inc. (the Company) of vested property rights without due process of law. The Company claimed that the Planning Commission's conditional approval of a residential subdivision plat created a vested property right to develop the subdivision as approved, and that the application of a subsequently enacted zoning ordinance to the subdivision deprived it of that property right. The Company brought this action under 42 U.S.C. § 1983 (1988), alleging that the Planning Commission deprived it of its right to substantive due process under the Fourteenth Amendment.[1] A jury returned a verdict for the Company in the amount of $84,000. The Planning Commission moved for judgment as a matter of law, but the district court denied the motion. We conclude that the Company had no protectible property interest, and therefore reverse.

### I.

The subdivision known as Patrick Henry Estates was controversial long before the Company acquired it in 1989. In 1977, the Company's predecessors in title submitted a proposed plat to the Planning Commission for approval. The Planning Commission refused to approve the plat because it did not comport with the Commission's comprehensive plan for development in the County and did not comply with the terms of the then-existing Subdivision Ordinance. The devel-

---

1. The Company also claimed that its property had been taken without just compensation, but the district court directed a verdict for the Planning Commission on that claim. The Company has not appealed that decision.

opers challenged that decision in state court and the state court ordered the Planning Commission to approve the plat and allow the developers to proceed. The Supreme Court of Appeals of West Virginia affirmed the decision of the lower court on the ground that the developers had fully complied with the subdivision regulations. *Singer v. Davenport*, 164 W.Va. 665, 264 S.E.2d 637, 641 (1980). Pursuant to the court order, the Planning Commission approved the subdivision plat on April 23, 1985, subject to the filing of a construction bond. The plat imposed no side setback requirements.[2] Because no construction bond was filed at that time, the plat was neither sealed nor recorded in the county clerk's office.

In 1988, the Planning Commission drafted a proposed Zoning and Development Review Ordinance and conducted numerous public hearings regarding the adoption of the Ordinance. Lawrence Everhart, one of the Company's two shareholders, attended a June 1988 meeting of the Planning Commission but neither read the Zoning Ordinance nor inquired whether it would apply to existing subdivisions. He testified that he did not make such an inquiry because the "subdivisions that were in existence were always grandfathered whenever they changed the ordinance," (J.A. at 68), and that it was his "understanding" that the Zoning Ordinance would not apply to "anything on the record prior to the adoption" of the Ordinance, (J.A. at 60). Lawrence Everhart did not explain the basis for these beliefs; Jefferson County previously had never adopted a zoning ordinance.

Contrary to Lawrence Everhart's "understanding," the text of the Zoning Ordinance made clear that it would apply to all subdivisions in the County. Section 1.2 of the Zoning Ordinance stated, "[t]hese regulations shall apply to all properties within Jefferson County, West Virginia." Jefferson County, W.Va., Zoning & Development Review Ordinance § 1.2 (1990) (Zoning Ordinance). Section 4.2 provided more specifically that "[e]xcept as hereinafter specified, no land, building, or premises shall hereafter be used, and no building or part thereof or other structure shall be located, erected, reconstructed, extended, enlarged, converted or altered except in conformity with the regulations herein specified." Zoning Ordinance § 4.2.[3] After the public hearings concluded, the Planning Commission recommended passage of the Zoning Ordinance by the County Commission of Jefferson County. The County Commission adopted the Zoning Ordinance on July 7, 1988, and it became effective on October 5, 1988.

Section 5.5(b) of the Zoning Ordinance imposed a side setback requirement of twelve feet for residential lots under 10,000 square feet. Zoning Ordinance § 5.5(b). All of the lots in Section D of Patrick Henry Estates were under 10,000 square feet in size.

On December 19, 1988, several months after the Zoning Ordinance became effective, the Company purchased Section D of Patrick Henry Estates. At the time of purchase, Section D was nothing more than raw land.[4] The Company posted the necessary construction bond and on February 3, 1989, officially recorded the final plat for Section D that had been approved by the Planning Commission in 1985. Shortly after the Company applied for its first building permits in June 1989, the Planning Commission informed it that the side setback requirements applied to its lots. The Company thereafter sought a variance from the side setback requirements for all of the lots in Section D because the setback requirements made it "difficult to locate a house on the lot." (J.A. at 545.) The Commission denied the blanket variance but agreed to consider requests for lot-by-lot

---

**2.** A "side setback requirement" is a requirement that any building constructed on a lot be "setback" a certain distance from the side property line. Neither the plat nor the covenants and restrictions of record for Patrick Henry Estates contained any side setback requirements.

**3.** The Company has essentially conceded that the Zoning Ordinance unambiguously applied to its subdivision. The Company admitted in its appellate brief that, had Lawrence Everhart read the Ordinance, he would have realized that the "setback restrictions in § 5.5(b) applied to preexisting subdivisions." (Brief of Appellee at 10.)

**4.** Between 1985 and 1988, the Company built 49 homes in Sections A and B of Patrick Henry Estates, some as close as five feet to the side line.

variances from the setback requirements. The Company did not appeal the denial of the blanket variance, but did pursue a number of individual variances. Although the Company was granted two requests for a variance, at least ten others were denied after protests from several members of the public. The Company did not appeal the denial of the ten variance requests.

Exasperated by the variance process, Lawrence Everhart and other developers asked the Planning Commission to amend the Zoning Ordinance to reduce the side setback requirements. The Planning Commission acknowledged that the Zoning Ordinance had caused hardship for the developers, and recommended to the County Commission that it reduce the side setback requirements. In response to the Planning Commission's recommendation, the County Commission amended the Zoning Ordinance to reduce the side setback requirements for lots under 30,-000 square feet from twelve feet to eight feet. Zoning Ordinance § 9.7. The amendment alleviated the problems of many of the developers in the County, but did not satisfy the Company. The Company requested that the side setbacks be further reduced from eight feet to five feet. When the Planning Commission failed to act upon its request, the Company filed this lawsuit.

## II.

In deciding a motion for judgment as a matter of law, the district court must determine, without considering the weight of the evidence or the credibility of witnesses, whether " 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) (quoting *Wheatley v. Gladden*, 660 F.2d 1024, 1027 (4th Cir.1981)). We review the decision of the district court *de novo. Id.*

Section 1983 imposes civil liability upon anyone who

under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. The Company contended at trial that the Planning Commission deprived it of substantive due process under the Fourteenth Amendment by arbitrarily and capriciously applying the Zoning Ordinance to Patrick Henry Estates, thereby depriving it of its vested property right to develop the property as it was approved by the Planning Commission. Specifically, the Company alleged that the Zoning Ordinance unlawfully imposed twelve-foot side setback requirements on the subdivision. The Company contended that the setback requirements prevented it from developing the subdivision as approved and rendered the lots in the subdivision "virtually worthless." (J.A. at 10.)

To establish a denial of substantive due process, the Company must show that it was arbitrarily and capriciously deprived of a "cognizable property interest, rooted in state law." *Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983); *see also United Land Corp. of Am. v. Clarke*, 613 F.2d 497, 501 (4th Cir.1980). The property interest must be more than a "unilateral expectation"; it must be a "legitimate claim of entitlement." *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir.1993) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) (internal quotations omitted). "If there is no cognizable property interest, there is no need to reach the question of whether a purported deprivation was arbitrary or capricious." *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir.1992).

To establish that it possessed a protectible property interest under West Virginia law, the Company relied on § 8–24–50 of the West Virginia Code, which provides that no zoning ordinance may

prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure is used at the time such ordinance or ordinances take effect.

W.Va.Code § 8–24–50 (Michie 1990).[5] The statute exempts pre-existing, nonconforming uses of land from compliance with subsequently enacted zoning ordinances. *Cf. Longwell v. Hodge*, 171 W.Va. 45, 297 S.E.2d 820, 823 (1982) ("grandfather" exceptions alleviate hardship of immediate compliance with new ordinance). The protections of the statute generally extend to existing uses, although the West Virginia Supreme Court of Appeals has recently recognized that in certain limited circumstances something less than actual use may constitute an "existing" non-conforming use. *H.R.D.E., Inc. v. Zoning Officer*, 189 W.Va. 283, 430 S.E.2d 341, 345 (1993). In determining whether a landowner has acquired a vested right to a nonconforming use, the court must consider

(1) whether the landowner has made substantial expenditures on the project;

(2) whether the landowner acted in good faith;

(3) whether the landowner had notice of the proposed zoning ordinance before starting the project at issue; and

(4) whether the expenditures could apply to other uses of the land.

Mere contemplated use or preparation or preliminary negotiations with contractors or architects will not vest the right to a nonconforming use.

*Id.* at 346.

Even under the most generous application of this test, the Company cannot establish a pre-existing, nonconforming use. The Company purchased Section D of Patrick Henry Estates *after* the Zoning Ordinance took effect and with actual knowledge that the Ordinance had been in effect for several months. Moreover, at the time of purchase the property was nothing more than raw land. By Lawrence Everhart's own admission, there were no roads, sidewalks, or other improvements; as Everhart testified, "[t]here was nothing there," (J.A. at 59). Because the Company had not expended substantial sums on Section D before the Zoning Ordinance

took effect, the Company failed to establish a pre-existing, nonconforming use. *H.R.D.E.*, at 346; *see also* Daniel R. Mandelker, *Land Use Law* § 6.20, at 220 (2d ed. 1988) (generally, actual physical construction is necessary for development rights to vest). Consequently, the Company has no legitimate claim of entitlement under § 8–24–50 to develop Section D without side setback requirements.

The Company makes much of the fact that the Planning Commission "approved" the subdivision plat for Patrick Henry Estates in 1985 and argues that the approval created a vested right to develop Section D as approved, i.e., without side setback requirements. This argument is tantamount to an assertion that, once approved, a subdivision plat is exempt from all future zoning and subdivision regulations. We can find no court that has adopted such a broad conception of vested rights.[6] The very cases upon which the Company relies recognize the majority rule that even the issuance of a building permit—a part of the construction process that occurs long after the approval of a subdivision plat—does not vest rights against future changes in zoning regulations. *See Littlefield v. Inhabitants of Lyman*, 447 A.2d 1231, 1233 (Me.1982); *Western Land Equities, Inc. v. City of Logan*, 617 P.2d 388, 394 (Utah 1980); *Smith v. Winhall Planning Comm'n*, 140 Vt. 178, 436 A.2d 760, 761 (1981); *cf. Harding v. Board of Zoning Appeals*, 159 W.Va. 73, 219 S.E.2d 324, 332 (1975) (landowner not deprived of substantial vested right when building permit revoked by administrative action). Although the courts of West Virginia have not specifically addressed the legal effects of the approval of a subdivision plat, most jurisdictions apply the general rule recognized in *H.R.D.E.* that a landowner must make substantial expenditures on a subdivision before it will obtain a vested right to complete the subdivision. *See, e.g., Lakeview Dev. Corp. v. City of S. Lake Tahoe*, 915 F.2d 1290, 1294, 1298 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111

---

**5.** The Jefferson County Zoning Ordinance contains a comparable "grandfather" provision. Zoning Ordinance § 4.3.

**6.** Moreover, neither West Virginia nor Jefferson County has enacted any statute or ordinance that creates vested rights in a plat approval.

S.Ct. 2890, 115 L.Ed.2d 1055 (1991); *Avco Community Developers, Inc. v. South Coast Regional Comm'n,* 17 Cal.3d 785, 790, 132 Cal.Rptr. 386, 389, 553 P.2d 546, 550 (1976), *cert. denied,* 429 U.S. 1083, 97 S.Ct. 1089, 51 L.Ed.2d 529 (1977); *Sanderson v. Town of Greenland,* 122 N.H. 1002, 453 A.2d 1285, 1287 (1982); *Ramapo 287 Ltd. Partnership v. Village of Montebello,* 165 A.D.2d 544, 568 N.Y.S.2d 492, 494 (App.Div.1991); *Crater Club, Inc. v. Adirondack Park Agency,* 86 A.D.2d 714, 446 N.Y.S.2d 565, 566–67 (App. Div.), *aff'd,* 57 N.Y.2d 990, 457 N.Y.S.2d 244, 443 N.E.2d 492 (1982); *Town of Hillsborough v. Smith,* 276 N.C. 48, 170 S.E.2d 904, 909 (1969); *Clackamas County v. Holmes,* 265 Or. 193, 508 P.2d 190, 192 (1973); *see also* Donald G. Hagman & Julian C. Juergensmeyer, *Urban Planning & Land Development Control Law* § 5.11, at 155 (2d ed. 1986). Since the Company expended *no* resources to develop Section D of Patrick Henry Estates before the Zoning Ordinance took effect, it acquired no vested rights. *See In re McCormick Management Co.,* 149 Vt. 585, 547 A.2d 1319, 1321–22 (1988) (rejecting developer's argument that it obtained vested development rights by filing its subdivision plat before enactment of local zoning ordinance).

Having failed to establish any protectible property interest, the Company cannot claim that the enactment of the Zoning Ordinance deprived it of that property interest without due process of law.[7] Accordingly, we reverse the district court's denial of the Planning Commission's motion for judgment as a matter of law.

*REVERSED.*

---

**7.** Similarly, the Company cannot claim that the enactment of § 9.7, even if it were arbitrary, deprived it of any vested property interest. To the contrary, § 9.7 augmented the Company's ability to develop its subdivision by *reducing* the side setback requirement from twelve feet to eight feet.