441 S.E.2d 370

**In re PETITION of G. Samuel and Jeanne C. SKEEN, for writ of certiorari from Decision of Zoning Board of Adjustments for Bluefield, Mercer County, West Virginia.**

**No. 21819.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided Feb. 17, 1994.

Lawrence E. Morhous, William P. Stafford, Brewster, Morhous & Cameron, Bluefield, for appellants.

J.W. Feuchtenberger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for appellee.

NEELY, Justice:

G. Samuel Skeen and Jeanne C. Skeen appeal from a 9 November 1992 order of the Circuit Court of Mercer County affirming the decision of the Zoning Board of Adjustment for the City of Bluefield that denied their application for a special use exemption to operate a babysitting service in their Bluefield home.

Mrs. Skeen operated the babysitting service in her home on Marmont Drive in Mercer County from 1981 through fall 1991. The service was properly licensed and supervised by both the State of West Virginia and the Mercer County Economic Opportunity Corporation. When the Skeens's house was purchased and destroyed to construct a new shopping center complex in fall 1991, the Skeens purchased their present residence on Ridgecrest Road in the City of Bluefield.

The Ordinances of the City of Bluefield classify Ridgecrest Road as an R–1 residence district. Pursuant to the ordinance, no business may be located or prosecuted in an R–1 residence district without application and permission by city zoning authorities. At the suggestion of an official from the City of Bluefield, the Skeens applied for a permit to have a babysitting service in their new home on 21 November 1991. That application was refused on the same day.

Pursuant to the provisions of *W.Va.Code* 8–24–51 through 8–24–65 [1969], the City of Bluefield maintains a Zoning Board of Adjustment ("the Board") whose function is to hear appeals from the strict application of the City's zoning ordinance and authorize special exceptions or conditional uses [1] to the ordinance. One such special exception listed in section 23–32 of the *Code of Ordinances of the City of Bluefield* (City Code) is for a "home occupation."

The Board heard the Skeens' appeal on 27 January 1992. Notice of such hearing, by letter and by publication, was given to all adjoining landowners and interested persons as required by law. Following an extensive hearing, the Board made findings of fact and conclusions of law denying the Skeens' application. From the Board's denial, the Skeens sought a *writ of certiorari* to the Circuit Court of Mercer County to reverse the Board's decision. By order entered on 9 November 1992, the Circuit Court affirmed the Board's decision. On 21 December 1992, the Circuit Court denied the Skeens' motion to alter or amend its order affirming the Board's decision.

Section 23–30 of the City *Code* divides residence districts into four classes varying as to the number of family dwellings allowable on each separate lot. An R–1 residence district provides minimum standards for the development and use of single-family de-tached housing built on separate lots. Section 23–31 of the *Code* sets out the "permitted uses" for land and structures in each residential district. Although section 23–31 does not include babysitting services as one of the "permitted uses" in an R–1 residence district, section 23–32 lists certain "special exceptions" allowed within an R–1 residence district upon authorization by the Board. Special exception number 12 provides that "home occupations" are allowable as a special exception. Section 23–3 of the Code defines "home occupation" as "an occupation conducted in a dwelling unit" and sets out the requisite elements of a "home occupation." Such elements, in summary, are as follows:

(a) no person other than members of the family are engaged in the occupation;

(b) the home occupation is subordinate to and incidental to home use for residential purposes and uses not more than 25% of the floor area;

(c) there is no change in the outside appearance of the building or premises;

(d) the home occupation is not conducted in any accessory building;

(e) no excess traffic or any need for parking is generated by the conduct of the home occupation;

(f) no equipment or process is used creating noise, vibration, glare, fumes, odors and like nuisances.

At the Board's hearing on 27 January 1992, the Skeens demonstrated that their babysitting service fully complies with the requirements set forth for a "home occupation." The Skeens' satisfaction of these requirements notwithstanding, the Board denied the application. The Skeens contend that the Circuit Court erred in affirming the Board's denial of their application because the Board failed to apply the principle of law appropriate to finding whether a special exception or conditional use exists.

1. In zoning law, a special exception is commonly understood to be synonymous with a conditional use. As A.H. Rathkopf in footnote one of chapter three in the *The Law of Zoning and Planning* 54–1 (3d ed. 1972) explains:

Although in this chapter we adhere to ordinary terminology and use the term 'special exception use' or 'special exception permit,' it should be pointed out in the beginning that this term is a misnomer. As will be made clear in this chapter, no 'exception' is made to the provisions of the ordinance in permitting such use; the permit granted is for a use specifically provided for in the ordinance in the case in which conditions, legislatively prescribed, are also found. A much more accu-

■ In Syllabus point 1 of *Harding v. Bd., etc., City of Morgantown,* 159 W.Va. 73, 219 S.E.2d 324 (1975), this Court distinguished between a special exception or conditional use and a variance:

"A special exception or conditional use, unlike a variance, does not involve the varying of an ordinance, but rather compliance with it. When it is granted, a special exception or conditional use permits certain uses which the ordinance authorizes under stated conditions."[2]

In other words, whereas a variance relates primarily to the allowance of a use of a particular property *prohibited* in the particular zone, the right to a special exception or conditional use automatically exists if the Board finds compliance with the standards or requisites set forth in the ordinance. *Id.*

■ In order for this Court to determine whether the conditional use sought by the applicant before the Board violated any of the conditions required before the granting of such a conditional use, the Board must make written findings of fact. *Id.* at 82, 219 S.E.2d 324. Such facts determine whether the particular conditional use applied for is consistent with the spirit, purpose and intent of the ordinance. *Id.* at 83, 219 S.E.2d 324. On appeal a board of zoning appeals is presumed to have acted correctly. However, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction. *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975).

■ No evidence was introduced at the hearing that the requirements for a home occupation special exception set forth in City Code section 23–3 were not met. Indeed, the Board based its denial on a ground wholly separate from the requirements set out in section 23–3, namely the virtual unanimous opposition of the neighboring landowners.[3] Pursuant to the rule articulated in *Harding, supra,* if the Board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists. Because the Board was plainly wrong in failing to apply its factual findings to the *Harding* standard, the Circuit Court's affirmation of its decision must be reversed.

We note that the Board's finding that no unnecessary hardship will redound to the Skeens in being deprived of the opportunity to conduct a babysitting service within their home was also in error. Mrs. Skeen depends on the service to maintain herself both financially and emotionally. Her service is substantially funded by the State of West Virginia, which has been endorsing this service for the benefit of underprivileged citizens within the City of Bluefield since 1981 and is currently conducting the service in 63 other residential locations.[4]

Furthermore, as admitted by the Board, refusal of the Skeens' application will set a precedent based on which the Board can refuse other home occupation applications for babysitting services in other neighborhoods. Such a precedent not only undermines the

---

rate description would be 'conditional use' permit.

**2.** In *Tullo v. Millburn Township,* 54 N.J.Super. 483, 149 A.2d 620 (App.Div.1959), the court further illustrates the distinction of a conditional use or special exception from a variance:

The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not at every or any location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The

enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone.

*See also* Yokley, *Zoning Law and Practice* § 15–4 (3rd ed. 1965).

**3.** We note that although a next door neighbor of the Skeens' indicated at the hearing that she had observed a toddler playing unsupervised on her wall on one occasion, no evidence was presented at the hearing that traffic, parking or noise would be enhanced substantially by the Skeens' babysitting service. In its findings of fact, the Board itself acknowledged such lack of evidence.

**4.** *See* Letter of Darnell Mullins of the West Virginia Department of Health and Human Resources, 9 December 1992. The letter is attached to the Skeens' appeal as Exhibit D.

good intentions of the Skeens and future applicants for such home occupation permits; it also adds further financial strain to other families in the City of Bluefield with two working parents who rely on such babysitting services.

Accordingly, for the foregoing reasons, we reverse.

Reversed.