336 S.E.2d 213

**Woodrow G. MILLER**

v.

**Mrs. Betty Lou PALMER,
City Clerk, et al.**

**No. 16441.**

Supreme Court of Appeals of
West Virginia.

Oct. 23, 1985.

David J. Joel, Wheeling, for appellants.

John Marshall, III, City Sol., Wheeling, for appellee.

NEELY, Justice:

On 30 August 1983 the Wheeling City Council adopted Ordinance # 8003 establishing a fire service charge. *W.Va.Code* 8–13–13 [1971] specifically provides a method by which the qualified voters of a municipality may challenge such an ordinance's enactment.[1] The City of Wheeling

---

**1.** *W.Va.Code* § 8–13–13 [1971] reads as follows: "Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection, parking facilities on the streets of otherwise, parks and recreational facilities, street cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance: Provided, that any sewerage and sewage disposal service and any service incident to the collection and disposal of garbage, refuse, waste, ashes, and trash and any other similar matter shall be subject to the provisions of chapter twenty-four [§ 24–1–1 et seq.], of this Code. The municipality shall not, however, have a lien on any property as security for payments due under such ordinance. *Notwithstanding the provisions of section four [§ 8–11–4], article eleven of this chapter, any ordinance enacted or substantially amended under the provisions of this section*

*shall be published as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be municipality. In the event thirty percent of the qualified voters of the municipality by petition duly signed by them in their own handwriting and filed with the recorder of the municipality within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended, the ordinance shall not become effective until it shall be ratified by a majority of the legal votes cast thereon by the qualified voters of such municipality at a regular municipal election or special municipal election, as the governing body shall direct.* Voting thereon shall not take place until after notice of such submission shall have been given by publication as above provided for the publication of the ordinance after it is adopted or substantially amended. *The powers and authority hereby granted to municipalities and to the governing bodies thereof are in addition and supplemental to the powers and authority named in any charters thereof.* Notwithstanding any other provisions of this section, in the event rates, fees and charges herein provided for shall be imposed by the governing body of any municipality for the purpose of replacing and in amounts approximately sufficient to replace in its general fund such amounts as shall

comported with all the requirements of *W. Va. Code* 8-13-13 [1971]; it published a Class II legal advertisement in the *Wheeling News Register* on 2 September and 9 September 1983, which outlined the procedures by which the qualified voters of the City of Wheeling could protest the enactment of Ordinance # 8003. No one filed a petition within the fifteen day period that the statute grants.

On 18 October 1983 Mr. Woodrow G. Miller and other Wheeling taxpayers presented a petition to Mrs. Betty Lou Palmer, City Clerk of the City of Wheeling,

requesting that Mrs. Palmer place an ordinance initiative on the ballot for the next municipal election, which, if enacted, would remove all service fees that City Council had enacted in the past, and prohibit the City Council from enacting *any type* of service fee in the future. If the voters of Wheeling had enacted Mr. Miller's proposed initiative, they would have succeeded in removing Ordinance # 8003.

Although the petition comported with the initiative provisions of § 11 and § 98 of the *Wheeling City Charter*,[2] the petition did

be appropriated to be paid out of ad valorem taxes upon property within the municipality pursuant to an election duly called and held under the Constitution and laws of the State to authorize the issuance and sale of general obligation bonds of the municipality for public improvement purposes, in the call for which election it shall be stated that the governing body of the municipality proposes to impose rates, fees and charges in specified amounts under this section for the use of one or more of the services above specified, which shall be related to the public improvement proposed to be made with the proceeds of the bonds, no notice, publication of notice, or referendum or election or other condition or prerequisite to the imposition of such rates, fees and charges shall be required or necessary other than the legal requirements for issuance and sale of such general obligation bonds." [Emphasis supplied by the Court.]

**2.** Section 11 of the Wheeling City Charter outlines the procedures for bringing ordinance initiatives and reads as follows:

SECTION 11. ORDINANCES INITIATED BY ELECTORS; PUBLIC VOTE; PUBLICATION.

Any proposed ordinance may be submitted to the Council by petition, signed by one thousand electors of the City. Such petition shall be conformed as provided by Section ninety-eight of this Charter, and shall be submitted, examined and certified in the manner provided in said Section ninety-eight. If the petition be certified to Council as provided in Section ninety-eight of this Charter, and contains a request that the said ordinance be submitted to a vote of the people, if not passed by the Council, the Council shall either (a) pass such ordinance without alteration within twenty days after attachment of the Clerk's certificate of sufficiency to the said petition; or (b) forthwith after the Clerk shall attach to the said petition his certificate of sufficiency, the Council shall call a special election, unless a general municipal election is to be held within ninety days thereafter, and at such special or general municipal election, such ordinance shall be submitted without alteration to

the vote of the electors of said City. If a majority of the votes cast be in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the City, and any ordinance proposed by petition, or which has been adopted by a vote of the people, shall not be repealed or amended except by a majority vote of the people. Any number of proposed ordinances may be voted upon at the same election in accordance with the provisions of this section, but there shall not be more than one special election in any period of six months for such purpose.

Whenever any ordinance or proposition is required by this Charter to be submitted to the voters of the City at any election, the City Clerk shall cause such ordinance or proposition to be published once in two daily newspapers, published in said City, such publication to be not more than twenty days or less than fifteen days before such election.

Section 98 of the Wheeling City Charter outlines the procedures the city clerk should follow when certifying petitions and reads as follows: SECTION 98. REQUIREMENTS FOR PETITIONS ISSUED UNDER CHARTER.

Signatures to petitions provided in this Charter need not be appended to one paper, but each paper bearing signatures shall state, at the top thereof, the purpose of the petition, and there shall be attached thereto the affidavit of the circulator thereof stating that each signature was made in his presence on the date specified and is the genuine signature of the person whose name it purports to be, and, in cases requiring signatures of qualified voters, that such person is to the best of his knowledge and belief a qualified voter of the City of Wheeling. Opposite each signature is to be given the place of residence in Wheeling of each signer, by street and number where possible, and the date such person signed the petition. All separate papers comprising a petition shall be assembled and filed with the City Clerk as one instrument. Upon receiving any petition, the City Clerk shall immediately examine the same, and if found to contain the number of valid signatures requisite for the purpose specified therein and that it

not comport with the requirements of *W.Va.Code* 8–13–13 [1971]: Mr. Miller had filed the petition too late and the petition did not contain the requisite number of signatures. Accordingly, Mrs. Palmer notified Mr. Miller and the other petitioners that she would not certify their petition.

Mr. Miller, et al., brought a writ of mandamus against Mrs. Palmer and the City of Wheeling in the Circuit Court of Ohio County asking the court to compel Mrs. Palmer to certify their petition in the manner that § 98 of the *Charter of the City of Wheeling* prescribes. The circuit court held that § 11 of the Wheeling City Charter made a *prima facie* case against Mrs. Palmer, and ordered that a rule issue against Mrs. Palmer to show cause why the writ of mandamus prayed for should not be awarded. After hearing argument of the parties, the circuit court awarded the writ of mandamus and ordered Mrs. Palmer to certify Mr. Miller's petition.

Mrs. Palmer and the City of Wheeling now appeal the awarding of the writ. Because of the clear and longstanding law in this area of municipal governance, we reverse the circuit court. The pivotal issue in this dispute is whether the voters of Wheeling may attack Ordinance # 8003 by proposing an alternative ordinance under the provisions of their City *Charter*, or whether *W.Va.Code* § 8–13–13 [1971] restricts their mode of attack to those means that the statute specifically grants.

■ *W.Va.Code* § 8–13–13 [1971] is a general law and it operates uniformly upon and is applicable to, without exception, all cities in the State. *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160, 163 (1963). In *Plymale,* the

City Council of the City of Huntington adopted fire protection and refuse removal fees pursuant to *W.Va.Code* 8–4–20 [1961].[3] A group of Huntington voters proposed initiative ordinances to ban the fees. The petitions to place the initiative ordinance on the ballot comported with the requirements of the *Huntington City Charter,* but the petitions did not comport with the more stringent requirements of *W.Va.Code* 8–4–20 [1961]. The Huntington voters brought an original writ of mandamus in this Court seeking to compel the Huntington City Clerk to certify their petitions. This Court denied their writ, however, and held that *W.Va.Code* 8–4–20 [1961] limited the means by which the voters of Huntington could attack fees enacted pursuant to *W.Va.Code* 8–4–20 [1961]. We noted:

"Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends solely upon grants of power by acts of Legislature and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provision of the *Constitution,* Article VI, Section thirty-nine (a)." Point 2, Syllabus, *State ex rel. Alexander v. The County Court of Kanawha County et al.,* 147 W.Va. 693, 130 S.E.2d 200.

Syl. Pt. 1, *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963). Because *W.Va.Code* 8–13–13 [1971] is a general law it limits any exercise of municipal power in any municipality within the State of West Virginia.

■ *W.Va.Code* 8–13–13 [1971], which provides for the enactment of the fee ordinances also provides detailed provisions

complies with the requirements hereof, he shall certify such petitions to be in good form and shall forthwith transmit such petition to the Council. If such petition does not contain the requisite number of valid signatures or fails to comply with the requirements hereof in any other respect, the City Clerk shall state in writing the defect or defects therein and shall return it to the party who filed it. If the petition is returned to the City Clerk within ten days thereafter, and then is found to meet the requirements hereof, the City Clerk shall certify same to be in good form, and shall transmit same to

the Council forthwith. The Council may allow the City Clerk such reasonable sum as may be necessary to secure any additional help required to assist him in the examination of any petition or petitions, or the City Manager may be directed to assign to the City Clerk competent City employees for such purpose. This section shall not apply to nominating petitions except as to the examination thereof.

**3.** *W.Va.Code* 8–4–20 [1961] was a previous incarnation of *W.Va.Code* 8–13–13 [1971] and was renumbered at 1969 W.Va. Acts c. 86.

governing how qualified voters may challenge these enactments. Because these challenge provisions are general law, they supercede and displace any challenge mechanism that a city charter may provide. *Wheeling City Charter*, § 11, under which Mr. Miller seeks to test Ordinance # 8003, provides that any initiative ordinance may be submitted to council by a petition signed by at least one thousand registered voters. A challenge pursuant to *W. Va. Code* 8–13–13 [1971] requires a petition signed by thirty percent of the registered voters. Additionally, *W. Va. Code* 8–13–13 [1971] also places time limits on challenges to service fees enacted within its scope. It is clear that it is less difficult to challenge the action of City Council under the *Wheeling City Charter*, § 11 than it is under *W. Va. Code* 8–13–13 [1971]. But this inconsistency between challenge schemes is easily resolved. As the *Plymale* court noted:

"Therefore, there is an obvious inconsistency, if not conflict, between the pertinent charter provision and the general law. It is clearly the weight of authority, and it is expressly provided in our Constitution, that in the event of an inconsistency or conflict between a charter provision and a general law, the latter will prevail, ..."

*State ex rel. Plymale v. City of Huntington*, 147 W.Va. at 735, 131 S.E.2d at 164 (1963). In other words, the challenge mechanism outlined in *W. Va. Code* 8–13–13 [1971] provides the only manner in which voters can challenge City of Wheeling Ordinance # 8003. Mr. Miller's petition neither had the signatures of thirty percent of registered voters, nor was it filed within the fifteen day period which *W. Va. Code* 8–13–13 [1971] requires. Accordingly his challenge of Ordinance # 8003 must fail.

 Finally, we should note that even though Mr. Miller's challenge seeks to remove and prohibit *any* type of service charge, as well as the fire service fee enacted by Ordinance # 8003, the reasoning in the *Plymale* case still applies. By comingling the goal of elimination of the fire service fee with several other goals, Mr.

Miller cannot avoid the restrictions of *W. Va. Code* 8–13–13 [1971]. Indeed, it would be tantamount to gutting the entire *Plymale* opinion for us to hold that Mr. Miller can circumvent *W. Va. Code* 8–13–13 [1971] by cloaking his challenge of Ordinance # 8003 in a more general petition. The law does not allow parties to achieve indirectly what they cannot achieve directly.

The Circuit Court of Ohio County was mistaken in holding that *State ex rel. Plymale v. City of Huntington* is not controlling in this case. Accordingly the judgment of the Circuit Court of Ohio is reversed.

Reversed.