557 S.E.2d 752

AMERICAN TOWER CORPORATION,
Petitioner Below, Appellee,

v.

COMMON COUNCIL OF the CITY
OF BECKLEY, Respondent
Below, Appellant.

No. 29177.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 10, 2001.

Dissenting Opinion of Justice
Starcher Dec. 13, 2001.

Dissenting Opinion of Chief
Justice McGraw Jan. 11, 2002.

346

Ancil G. Ramey, Steptoe & Johnson, Charleston, for the Appellant.

J. Michael Weber, Spilman Thomas & Battle, PLLC, Parkersburg, Carol A. Steinour, Marilyn McClure–Nemers, McNees, Wallace & Nurick, Harrisburg, PA, Anita R. Casey, MacCorkle, Lavender & Casey, PLLC, Charleston, for the Appellee.

Dennis R. Vaughan, Jr., Vaughan Law Firm, Charleston, for Amicus Curiae, the West Virginia Municipal League, Inc.

DAVIS, Justice.

The appellant herein and respondent below, Common Council of the City of Beckley [hereinafter referred to as "the Council"], appeals from an order entered October 25, 2000, by the Circuit Court of Raleigh County. In that order, the circuit court ruled that the Council had acted in derogation of the governing statutory law, W. Va.Code § 8–24–55(3) (1969) (Repl. Vol. 1998),[1] when it set aside the decision of the City of Beckley Board of Zoning Appeals [hereinafter referred to as "the Board"] to grant a condi-

---

1. For the text of this provision see Section III, *infra.*

tional use permit to the appellee herein and petitioner below, American Tower Corporation [hereinafter referred to as "ATC"], to build a radio antenna tower. The Council appeals the circuit court's ruling, and contends that it did not act improperly when it denied ATC the conditional use permit it had requested. Upon a review of the parties' arguments, the record designated on appeal, and the pertinent authorities, we conclude that the circuit court correctly decided that the Zoning Ordinance for the City of Beckley improperly vested decision-making authority in the Council instead of reserving such power to the Board as required by W. Va.Code § 8–24–55(3). However, because the Board failed to make written findings of fact when it approved ATC's conditional use permit, we are unable to evaluate the correctness of that tribunal's ruling. Accordingly, we affirm, in part, and reverse, in part, the October 25, 2000, order of the Raleigh County Circuit Court and remand this case to the Board for further proceedings consistent with this Opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 14, 1999, ATC applied for a conditional use permit to allow it to construct a radio antenna tower within the corporate limits of the City of Beckley [hereinafter referred to as "the City"].[2] Upon the completion of construction thereon, ATC intended to lease this tower to various wireless service providers for the transmission of their signals. Thereafter, on November 17, 1999, the Board approved ATC's application and directed its secretary to present its recommendation to the Council. Following presentation of ATC's conditional use permit application to the Council and approval thereof

by that body, the City issued a permit to ATC on December 8, 1999, to allow it to construct its proposed tower.

One week later, on December 15, 1999, the City issued a stop work order which required ATC to immediately halt construction of its previously approved tower project. Thereafter, the Council conducted a public hearing, on February 8, 2000, during which it heard public comments regarding ATC's proposed construction of a radio antenna tower as described in its earlier conditional use permit application. Following concerns voiced by numerous citizens as to the effects of the tower on the health of nearby residents; the appearance and resale value of surrounding property; and the possibility that the tower's operation might interfere with medical procedures at a nearby hospital and diagnostic clinic,[3] the Council voted unanimously to refuse ATC's application request.

ATC then appealed the Council's decision to the Circuit Court of Raleigh County,[4] on March 9, 2000, wherein it filed a petition for writ of certiorari.[5] Following a hearing, the lower court, ruling in favor of ATC, determined, by order entered October 25, 2000, that

> 1. The action taken by the Respondent [the Council] was void because the portion of the ordinance that authorized it is contrary to statute.
>
> . . . .
>
> 2. The action of the City Council is ineffective because it is not based on the comprehensive plan or the ordinance.
>
> . . . .
>
> 3. The action of City Council is not effective because it is contrary to the Federal Telecommunications Act.
>
> . . . .

---

2. The anticipated construction site is situate in a B–2 use district which is described as a "[m]all or general commercial-business district." *See* Beckley, W. Va., Zoning Ordinance art. I, § 15–4(A) (Oct. 25, 1994).

3. During this proceeding, ATC alleged that its proposed construction would comply with the applicable federal regulations. *See generally* 47 U.S.C.A. § 332 (1982 & 1996) (Main Vol. 1991 & Supp. 2001).

4. ATC also filed a civil action for monetary damages and injunctive relief against the Council in federal court, which suit has since been dismissed without a decision on the merits.

5. W. Va.Code § 8–24–59 (1969) (Repl. Vol. 1998) directs, in pertinent part, that "[e]very decision or order of the board of zoning appeals shall be subject to review by certiorari."

From this decision of the circuit court, the Council appeals to this Court.

## II.

### STANDARD OF REVIEW

■ On appeal, this Court has been asked to review portions of the Beckley Zoning Ordinance to determine whether it comports with the governing statutory law and to decide whether the Council acted in accordance with these provisions. As these matters involve questions of law, we accord the circuit court's ruling in regard thereto a plenary review.[6] " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 2, *Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 546 S.E.2d 454 (2001). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). *See also* Syl. pt. 1, *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980) ("In reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law."). Mindful of this standard of review, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

■ The primary error [7] assigned by the Council concerns the circuit court's ruling wherein it determined that the Beckley Zoning Ordinance contained language that conflicted with the applicable statutory provision and, thus, that the Council had improperly exercised authority that had been statutorily granted to the Board.[8] At issue herein is that portion of the Beckley Zoning Ordinance which provides that the Beckley Board of Zoning Appeals

> shall have the ... power[ ] and it shall be its duty to ...
>
> . . . .
>
> [h]ear and decide applications for conditional uses, as defined and required in this chapter; *such findings and recommendations shall be made to the council of the city* within thirty (30) days after a decision. *Upon receipt of such report or decision, the council either shall by resolution approve and confirm said decision,* with or without changes, whereupon the application for conditional uses as applied for may be issued; *or shall refuse to approve and confirm said decision*[.]

Beckley, W. Va., Zoning Ordinance art. I, § 15–6(G)(2) (June 25, 1996) (emphasis added). Pursuant to this language, the Council accepted the Board's initial approval of ATC's conditional use permit as a recommended decision and proceeded to determine anew the propriety of issuing the permit, ultimately denying the same.

Both the quoted ordinance language and the Council's actions in accordance therewith differ from the corresponding statutory provision, which directs that a "board of zoning appeals *shall* ... [h]ear and *decide* special exceptions [9] to the terms of the ordinance

---

6. Additional standards of review applicable to the precise issues involved in this appeal will be incorporated into our discussion of such issues. *See infra* Section III.

7. The Council also assigns error to the remaining rulings of the circuit court regarding the propriety of its denial of ATC's requested conditional use permit and the compliance of this decision with the governing federal law. For further treatment of these issues, *see infra* note 14.

8. At this juncture, we wish to acknowledge the appearance of Amicus Curiae in this proceeding, ¹

the West Virginia Municipal League, Inc. We will consider the League's comments in conjunction with the arguments advanced by the Council, with whom the League is aligned.

9. While the ordinance speaks of "conditional uses" while the statute refers to "special exceptions", this discrepancy in terms is a distinction without a difference as both phrases are generally used interchangeably in the field of zoning law. *See Harding v. Board of Zoning Appeals*, 159 W.Va. 73, 77, 219 S.E.2d 324, 327 (1975) ("A conditional use ... is another, less frequently used, term for a 'special exception.' "). *See also*

upon which the board is required to act under the ordinance [10][.]" W. Va.Code § 8–24–55(3) (1969) (Repl. Vol. 1998) (emphasis and footnotes added). According to this mandatory language, the Board, and not the Council, is the entity responsible for rendering a final decision as to whether ATC's requested permit should be allowed.

Given the disparity between these two provisions, we must determine which law dictates the scope of authority extended to a board of zoning appeals to decide whether to grant or deny a conditional use permit. In this regard, the Legislature has firmly announced that "[a]ny ordinance provision which is inconsistent or in conflict with any provision of this chapter shall be of no force and effect." W. Va.Code § 8–1–6 (1969) (Repl. Vol. 1998). For the purposes of such a determination, the phrase "inconsistent or in conflict with" has been defined as

> mean[ing] that a charter or ordinance provision is repugnant to the Constitution of this State or to general law because such provision (i) permits or authorizes that which the Constitution or general law forbids or prohibits, or (ii) forbids or prohibits that which the Constitution or general law permits or authorizes[.]

W. Va.Code § 8–1–2(b)(9) (1969) (Repl. Vol. 1998).

[3] This Court, also, has considered the disparity that may occur between a zoning ordinance and a statutory provision, and succinctly observed "[t]hat municipal ordinances are inferior in status and subordinate to legislative acts is a principle so fundamental

that citation of authorities is unnecessary. Equally fundamental is the legal principle that where an ordinance is in conflict with a state law the former is invalid." *Vector Co. v. Board of Zoning Appeals,* 155 W.Va. 362, 367, 184 S.E.2d 301, 304 (1971) (citations omitted). Considering the Legislature's prior resolution of such discrepancies and well-established legal principles, we held that "[w]hen a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. pt. 1, *id.,* 155 W.Va. 362, 184 S.E.2d 301.[11] Thus, it is apparent that the language of W. Va.Code § 8–24–55(3) prevails to the extent that § 15–6(G)(2) of the Beckley Zoning Ordinance conflicts therewith by authorizing the Council, rather than the Board, to decide conditional use applications.

 The pertinent language of § 8–24–55(3) directs that a "board of zoning appeals *shall* . . . [h]ear and *decide* special exceptions to the terms of [an] ordinance." (Emphasis added). Ordinarily, when this Court interprets an act of the Legislature, we give the statutory language effect when its meaning is plain.

> " 'When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.' Syllabus point 5, *State of West Virginia v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d

Syl. pt. 1, *id.,* 159 W.Va. 73, 219 S.E.2d 324 ("A special exception or conditional use, unlike a variance, does not involve the varying of an ordinance, but rather compliance with it. When it is granted, a special exception or conditional use permits certain uses which the ordinance authorizes under stated conditions.").

**10.** In the case *sub judice,* it appears that ATC's application for a conditional use permit for the construction of a radio antenna tower is a permissible conditional use contemplated by the Beckley Zoning Ordinance and within the scope of those matters "upon which the board is required to act under the ordinance". W. Va.Code § 8–24–55(3) (1969) (Repl. Vol. 1998). *See* Beckley, W. Va., Zoning Ordinance art. I, § 15–3 (Oct. 25, 1994) (listing, as a "[c]onditional use[ ]

. . . [that] may be permitted within any 'use district,' " "[r]adio and television antenna towers, commercial"). However, without written findings of fact detailing the Board's decision to grant the requested permit, we cannot render a final ruling as to the correctness of that determination. *See* text at pages 757–758, *infra.*

**11.** *Cf.* Syl. pt. 3, *State ex rel. Foster v. City of Morgantown,* 189 W.Va. 433, 432 S.E.2d 195 (1993) (" ' "In the event of an inconsistency or conflict between a provision of a city charter and a general law, the latter will prevail." Syl. Pt. 2, *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963).' Syl. pt. 2, *Miller v. Palmer,* 175 W.Va. 565, 336 S.E.2d 213 (1985).").

353 (1959)." Syllabus point 1, *VanKirk v. Young,* 180 W.Va. 18, 375 S.E.2d 196 (1988).

Syl. pt. 3, *Webster County Comm'n v. Clayton,* 206 W.Va. 107, 522 S.E.2d 201 (1999).[12] In the above-quoted statutory language, the Legislature has enumerated certain powers and duties that it has vested in boards of zoning appeals, employing the word *shall* to designate the mandatory nature of this ascription of authority. " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997).[13] In other words, "[g]enerally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." *State v. Allen,* 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) (citations omitted). Therefore, we hold that the plain statutory language of W. Va.Code § 8–24–55(3) (1969) (Repl. Vol. 1998) requires a board of zoning appeals to "[h]ear and decide special exceptions to the terms of [a zoning] ordinance upon which the board is required to act under the ordinance." Insofar as the Beckley Zoning Ordinance vested this power in the Council rather than in the Board it is invalid, and the Council's final decision denying ATC's application for a conditional use permit was erroneous. Accordingly, the circuit court's ruling in this regard is affirmed.[14]

█ Despite this ruling, however, the circuit court's decision must nevertheless be reversed, in part, as we remain uncertain as to the propriety of the Board's initial decision to grant ATC's requested permit. Ordinarily,

"[w]hile on appeal there is a presumption that a board of zoning appeals acted correctly, a reviewing court should reverse the administrative decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction." *Syllabus* point 5., *Wolfe v. Forbes,* [159] W. Va. [34], 217 S.E.2d 899 (1975).

Syl. pt. 3, *Harding v. Board of Zoning Appeals,* 159 W.Va. 73, 219 S.E.2d 324 (1975). However, on the appellate record presently before us, we cannot assess the correctness of the Board's initial determination as there are no written findings of fact regarding its decision to grant a conditional use permit to ATC.

█ On prior occasions, we have counseled boards of zoning appeals regarding the prudence of rendering a written decision:

In order for this Court to determine whether the conditional use sought by the applicant before the Board violated any of the conditions required before the granting of such a conditional use, the Board *must make written findings of fact.* [*Harding,* 159 W.Va.] at 82, 219 S.E.2d[ at 329-30]. Such facts determine whether the particular conditional use applied for is consistent with the spirit, purpose and intent of the ordinance. *Id.*[, 159 W.Va.] at 83, 219 S.E.2d [at 330].

*In re Skeen,* 190 W.Va. 649, 651, 441 S.E.2d 370, 372 (1994) (emphasis added). Moreover, [w]ithout such findings it would not be possible for the circuit court upon certiorari or this Court upon writ of error to determine whether the conditional use sought by the applicant before the board

---

12. *Accord* Syl. pt. 4, *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999) (" ' "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997).").

13. *Accord* Syl. pt. 9, *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994)

(" ' "The word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Point 2 Syllabus, *Terry v. Sencindiver,* 153 W.Va. 651[, 171 S.E.2d 480 (1969) ].' Syl. pt. 3, *Bounds v. State Workmen's Compensation Comm'r,* 153 W.Va. 670, 172 S.E.2d 379 (1970).").

14. As a result of our resolution of this issue, we need not address further the Council's remaining assignments of error. *See supra* note 7.

violated any of the conditions required before the granting of such a conditional use. In other words, these review procedures would be worthless if it could be said that written findings are not necessary, for there would be nothing to review.

*Miernyk v. Board of Zoning Appeals*, 155 W.Va. 143, 148, 181 S.E.2d 681, 684 (1971), *overruled on other grounds by* Syl. pt. 2, *Harding v. Board of Zoning Appeals*, 159 W.Va. 73, 219 S.E.2d 324 (1975). We concur with these admonishments, and now clarify this procedure by holding that when a board of zoning appeals decides special exceptions to the terms of a zoning ordinance, the board shall issue written findings of fact to permit a reviewing court to ascertain whether the board's decision complies with the standards set forth therefor in the subject ordinance.[15] Due to the absence in the appellate record of a written statement of the factual basis for the Board's decision, we remand this case to that tribunal for further proceedings consistent with this Opinion. In this regard, we are mindful that "[w]hen a reviewing court has determined that there was reversible error in an administrative decision and the cause is remanded without restrictions to the administrative body, that tribunal is vested with discretion to decide whether to conduct a reconsideration merely or a full rehearing." Syl. pt. 5, *Harding*, 159 W.Va. 73, 219 S.E.2d 324. Accordingly, we leave to the Board to determine the nature and scope of remand proceedings appropriate in this case.[16]

## IV.

## CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the October 25, 2000, decision of the Circuit Court of Raleigh County and remand this matter to the City of Beckley Board of Zoning Appeals for further proceedings consistent with this Opinion.

Affirmed, in part; Reversed, in part; and Remanded.

Chief Justice McGRAW and Justice STARCHER dissent and file dissenting opinions.

STARCHER, Justice, dissenting.

(Filed Dec. 13, 2001)

The cell phone is an amazing device, but people have the right to control where the towers go.

The majority opinion's statutory reading or reasoning is simply not persuasive. The controlling statute (*W.Va.Code*, 8–24–55(3)) requires that a BZA *shall* decide special exceptions "... upon which the [BZA] *is required to act under the* [local] *ordinance.*"

However, the Beckley ordinance does *not* require the Beckley BZA to decide special exceptions. Rather, the Beckley ordinance requires the *city council* to decide special exceptions. Thus, the statutory requirement is simply inapplicable to the Beckley BZA's review of special exceptions.

Also, the Beckley Council's position, that the statute permits a city council to reserve special exception decisions to itself, is supported by all of the decisional authority in this state and elsewhere. The majority opinion does not cite any cases that adopt its view. The holding in the majority opinion would invalidate the special exception procedures in Charleston, Lewisburg, and other cities. The West Virginia Municipal League

---

**15.** Distinguishable from the instant appeal is our prior decision in *Harding* wherein we required administrative bodies of zoning appeals boards to render written decisions detailing the factual basis for their decisions. Syl. pt. 4, 159 W.Va. 73, 219 S.E.2d 324 ("Where the power to pass upon special exceptions or conditional uses allowable by a zoning ordinance has been delegated to an administrative body, the body must set forth the factual basis of its determination so that a reviewing court may ascertain whether the administrative decision conforms to the standards in the ordinance for the particular action taken."). The subject case is analogous to, albeit different from, the situation at issue in *Harding* wherein the administrative body referenced was associated with the board of zoning appeals as a subpart of that entity, but the board nevertheless retained ultimate decisional authority. *See* 159 W.Va. at 75, 219 S.E.2d at 326. This scenario does not exist in the facts of the case *sub judice*.

**16.** While we recognize the discretion accorded to boards of zoning appeals in cases such as this one, we likewise appreciate that the complexity of the issues herein may mitigate in favor of a full rehearing upon remand.

has filed an extensive *amicus curiae* brief on behalf of the Beckley Council's position. Moreover, what are the implications of this Court invalidating as illegal the procedures that have been relied upon in a number of cities, for years, to address special exceptions? The opinion does not address these concerns, either. In summary, there is a more than reasonable construction of the statute that favors the Beckley position. That is the construction that we should adopt, rather than strike down the democratic expression of the citizens of Beckley.

I hope that the Legislature clarifies the statute and restores to the citizenry their right to have their say. I join Chief Justice McGraw in dissenting.

McGRAW, Chief Justice, dissenting.

(Filed Jan. 11, 2002)

I dissent because I feel the majority's interpretation of the statute leaves the general public without a voice on a matter of public concern. I think that the majority has read the statute in question too narrowly. The full statute reads that a board of zoning appeals shall:

> (1) Hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or rule and regulation adopted pursuant to sections thirty-nine through forty-nine of this article;
>
> (2) Permit and authorize exceptions to the district rules and regulations only in the classes of cases or in particular situations, as specified in the ordinance;
>
> (3) Hear and decide special exceptions to the terms of the ordinance upon which the board is required to act under the ordinance; and
>
> (4) Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.
>
> In exercising its powers and authority, the board of zoning appeals may reverse or affirm, in whole or in part, or may modify the order, requirement, decision or determination appealed from, as in its opinion ought to be done in the premises, and to this end shall have all the powers and authority of the official or board from whom or which the appeal is taken.

W.Va.Code § 8-24-55(3) (1969). While it is true that the Board of Zoning Appeals shall "decide" matters under this statute, nothing in this section states that the determinations of the Board may not be made subject to review by the Common Council as a whole. Also, the code provides that:

> As a part of the zoning ordinance, the governing body of the municipality or the county court shall create a board of zoning appeals consisting of five members to be appointed by the governing body of the municipality or by the county court, as the case may be.

W.Va.Code § 8-24-51 (1969). This provision is also consistent with the notion that the governing body of the municipality may review decisions of a board of zoning appeals.

But of greater concern to me is that the majority opinion ignores the real world impact of this technical decision. In realty, a board of zoning appeals is made up of appointed officials; the members of the board never have to run for office or otherwise answer to the public for their decisions, as the members of a city council must do. Also, the relative positions of the adversaries at board hearing are usually extremely unequal. Quite often you will have on one side a well funded, corporate actor with paid, professional help who seeks to "bend" the rules a little; on the other side you usually have a number of concerned neighbors, with little or no professional help, who must volunteer their time and sometimes miss work just to attend a meeting. Giving the final say to the board of zoning appeals stacks the deck against the public that much more, by reducing the steps an applicant must take, and removing the oversight of a publicly elected body.

Finally, the majority opinion is largely silent on an interest of great public importance. The question of the location of communication towers presents an especially thorny issue for cities all over the country, and a perfect illustration of the above-described scenario of the special interest versus the average citizen. While there is no doubt the public needs and wants access to wireless communication services, it is equally clear that nobody wants towers to spring up from every building or hillside. Communications companies or tower companies, on the other hand, have a rational and reasonable goal of improving their service, which is often directly at odds with the aesthetic values of the public. If a city council has no oversight of a board of zoning appeals, then I fear the public will have little or no voice in this debate.

My research shows that we currently have no uniform way of dealing with this issue in our state. And this is not just a state issue, but is a problem all over the country, one which Congress attempted to address with the Federal Telecommunications Act of 1996. The Act discuses the authority of local authorities to control the placement of towers, but sets limits on that authority:

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. 332(c)(7)(1996). Commentators from all sides have weighed in on this topic.[1]

---

1. For a good overview, but one slanted heavily in favor of the phone companies, see Kevin M. O'Neill, Wireless Facilities Are a Towering Problem: How Can Local Zoning Boards Make the Call Without Violating Section 704 of the Telecommunications Act of 1996?, 40 Wm. & Mary L.Rev. 975 (1999). See also Dean J. Donatelli, Locating Cellular Telephone Facilities: How Should Communities Answer When Cellular Telephone Companies Call?, 27 RUTGERS L.J. 447, 458 (1996)

The Supreme Court of New Jersey attempted to rein in the mushrooming growth of communication towers in a recent opinion, see, Smart SMR of New York, Inc. v. Borough of Fair Lawn Board of Adjustment, 152 N.J. 309, 704 A.2d 1271 (1998), but with mixed success.[2]

The point of my discussion, is that the placement of communication towers is a growing issue of public concern. In the absence of citizen-driven action by the Legislature, I feel this issue is best left under the control of elected, not appointed, officials at the local level. Because I feel that the Beckley ordinance is not a "ordinance provision which is inconsistent or in conflict with" state law, W. Va.Code § 8-1-6 (1969), and because I think this opinion, by taking decision making authority away from elected representatives will invite future problems with communication towers, I must respectfully dissent.

---

2. For a discussion of this case and its impact, and a good discussion of the overall issue see, Robert M. Porcelli, The New Jersey Supreme Court Changes the Landscape and Future of Land Use Law, 31 Rutgers L.J. 591 (2000).