IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 24-208

_____

FILED

May 1, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ROBERT CLARK, ET AL.,
Petitioners Below, Petitioners,

v.

WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,
Respondent Below, Respondent.

_____

Certified Questions from the Circuit Court of Kanawha County
The Honorable Jennifer Bailey, Judge
Civil Action No. 18-AA-9

CERTIFIED QUESTION ANSWERED
_____

Submitted: March 5, 2025
Filed: May 1, 2025

Lonnie C. Simmons, Esq.
DiPiero Simmons McGinley & Bastress, PLLC
Charleston, West Virginia
Counsel for Petitioners

Ronda L. Harvey, Esq.
Steptoe & Johnson, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE TRUMP delivered the Opinion of the Court.

JUSTICE BUNN, deeming herself disqualified, did not participate in the decision of this case.

JUDGE CARRIE L. WEBSTER, sitting by temporary assignment.

# SYLLABUS BY THE COURT

1.      "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.      "By meeting certain eligibility requirements, a public employee acquires a right to payment under a pension plan. For any employee not yet eligible for payment, this is a mere expectancy[.]" Syl. Pt. 7, in part, *Booth v. Sims*, 193 W. Va. 323, 456 S.E.2d 167 (1995).

3.      ""It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W. Va. 445, 300 S.E.2d 86 (1982).' Syl. Pt. 1, *E.H. v. Matin*, 201 W. Va. 463, 498 S.E.2d 35 (1997).'" Syl. Pt. 4, *Am. Tower Corp. v. Common Council of City of Beckley*, 210 W. Va. 345, 557 S.E.2d 752 (2001).

4.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

5.      "Under Code, 58-5-2, this Court has no jurisdiction to determine a certified question of fact." Syl. Pt. 1, *State v. Stout*, 142 W. Va. 182, 95 S.E.2d 639 (1956).

**TRUMP, Justice:**

This matter is before the Court upon the March 21, 2024, order of the Circuit Court of Kanawha County which certified the following questions to us based on our opinion in *West Virginia Consolidated Public Retirement Board v. Clark (Clark I)*, 245 W. Va. 510, 859 S.E.2d 453 (2021):

1. The West Virginia Supreme Court held in *West Virginia Consolidated [Public] Retirement Board v. Clark*, 245 W. Va. 510, 859 S.E.2d 453 (2021) that Respondent Consolidated Public Retirement Board failed to timely correct the inclusion of statutory subsistence pay in calculating the officers' pensionable compensation. Does this holding mean that the subsistence pay received by all retired ***and active*** DNR law enforcement officers as of the date of the mandate order issued on July 14, 2021,[1] must be included in calculating their pensionable income?

2. Under the facts of this case, is Petitioner entitled to recover reasonable attorneys' fees from Respondent Consolidated Public Retirement Board?

Upon careful review of the parties' briefs and arguments, the appendix record, and the applicable law, we now resolve the certified questions as set forth below and return this matter to the circuit court for further proceedings there.

---

[1] This Court's mandate issued on July 15, 2021, not July 14.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioners are current and retired Natural Resources Police Officers employed by the West Virginia Division of Natural Resources (DNR).[2] Since 1996, the officers have received a statutory "subsistence allowance" to cover "required telephone service, dry cleaning or required uniforms, and meal expenses while performing their regular duties in their area of primary assignment."[3] In March 1997, DNR began including those payments in reporting the officers' "compensation" to the West Virginia Consolidated Public Retirement Board (the Board); "compensation" is one variable in the formula for calculating retirement annuities under the Public Employees Retirement System (PERS). This increase in pensionable compensation meant greater contributions from the officers and DNR to PERS. For retired DNR officers, the increased pensionable compensation meant higher final average salaries for purposes of calculating retirement annuities and, in turn, a higher retirement annuity.[4]

---

[2] While it does not appear from the record that any petitioners have been dismissed from this case based on our holdings in *Clark I*, the certified questions appear to be framed to address only those officers who are either still actively employed by the DNR or, if not still employed as natural resources police officers, have not yet begun receiving retirement benefits. For brevity, we refer to those officers as "active and inactive officers."

[3] W. Va. Code § 20-7-1(i) (2017).

[4] Nonetheless, the appendix record reflects that the final average salaries and retirement annuities are not substantially higher. The "subsistence allowance" is $130 per month, or $65 per pay period, and the officers' monthly contribution based thereon is $5.85.

In April 2014, the Board discovered that DNR had been reporting the subsistence allowance as part of the officers' compensation. After review, in October 2015, the Board informed the officers that the subsistence allowance did not qualify as "compensation" for purposes of calculating retirement benefits. The Board informed retired officers that if the subsistence allowance had been included in their "final average salary" for computation of benefits, then the Board would recover overpaid benefits from the retired officers and adjust their retirement annuities prospectively to do so. As for active and inactive officers, the Board indicated that it would refund to them all erroneous employee contributions and that it would not treat subsistence allowance as pensionable compensation for purposes of calculating their retirement benefits. After an internal administrative appeal hearing, the Board ultimately entered a Final Order memorializing this decision on December 21, 2017.

Thereafter, the officers filed an administrative appeal of the Board's decision in the Circuit Court of Kanawha County. That court reversed the Board's order, finding that the subsistence allowance was pensionable compensation.[5] On appeal of that decision to this Court, we determined that the subsistence allowance was not "compensation" and, therefore, not subject to PERS. *Clark I*, 245 W. Va. at 518, 859 S.E.2d at 461. This Court also held that the 2015 version of the PERS correction statute, West Virginia Code § 5-10-

---

[5] In the May 4, 2020 order that was appealed to this Court in *Clark I*, the circuit court, *inter alia*, retained jurisdiction over the petitioners' request for an award of attorneys' fees, stating that such issue "would be decided after the appeal was resolved."

3

44, "is a remedial statute that may be applied to correct an error in the Public Employees Retirement System, found at West Virginia Code §§ 5-10-1 to -55, that occurred before July 1, 2015." *Id.* at 513, 859 S.E.2d at 456, Syl. Pt. 9, in part.

However, we further observed that West Virginia Code § 5-10-44 (the correction statute) requires timely action by the Board. *Id.* at 524, 859 S.E.2d 467. West Virginia Code § 5-10-44(a) sets forth the "general rule" that the Board is required "to correct errors in the retirement system in a timely manner," and "the Legislature directed that timeliness be measured from the point at which the Board learns of an error." *Clark I*, 245 W. Va. at 525, 859 S.E.2d at 468. In addressing overpayments to retirants or their beneficiaries, the Court found that the correction statute at subsection (e) "does not contain similar direction. Instead, it requires the Board to correct an error resulting in overpayment in a timely manner, period." *Id.* Thus, we found that "the Board's ability to correct overpayments made to [the petitioners] depends on whether the Board's correction effort is timely under § 5-10-44(e)." *Id.*

Noting its failure to discover the error between March 1997 and April 2014, this Court found that the Board's correction effort was not timely. *Id.* As a result, we ruled that the Board "may not require [the petitioners] *who have received overpayments from PERS due to that error* to repay those amounts[,]" nor could the Board "prospectively adjust payments to *those retirant- and beneficiary-[petitioners] to whom annuity payments have already started*." *Id.* at 526, 859 S.E.2d at 469 (emphasis added). However, this Court

4

limited its review to the timeliness of the Board's action in correcting overpayments to retirants and their beneficiaries because "[t]he circuit court's analysis, findings, and the majority of the parties' argument on appeal bear on the timeliness inquiry under § 5-10-44(e)." *Id*. at 525 n.77, 859 S.E.2d at 468 n.77. The Court did "not address the timeliness of other courses of corrective action" such as West Virginia Code § 5-10-44(d) (2015) pertaining to overpayments to the retirement system by an employee. *Id*. We remanded this case to the circuit court for further proceedings, and in our July 15, 2021, mandate "ordered that the parties shall bear their own costs."

Following remand, the parties engaged in briefing regarding the applicability of the Court's holding in *Clark I* to the officers' contention that the Board also failed timely to correct system overpayments to the active and inactive officers as of July 15, 2021. They also briefed the petitioners' request for an award of attorney's fees. Ultimately, the circuit court certified the above questions to this Court.

## II. STANDARD OF REVIEW

"The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). In keeping with this standard, we will consider the questions posed by the circuit court.

## III. DISCUSSION

In its certification order of March 21, 2024, the circuit court answered both certified questions in the affirmative, concluding that *Clark I*'s holding was applicable to active and inactive officers and that the officers were entitled to recovery of attorney fees in this case. We consider each question in turn.

### *A. Certified Question No. 1*

The circuit court's first certified question asks whether our holding in *Clark I* "means that the subsistence pay received by all retired ***and active*** DNR law enforcement officers as of the date of the mandate order issued on July [15], 2021, must be included in calculating their pensionable income." In response to this question, the circuit court answered, "Yes."

We disagree with the circuit court's answer, and we answer this question "no" based on the plain language of both *Clark I* and West Virginia Code § 5-10-44 (the correction statute). In *Clark I*, this Court found first that the "subsistence allowance" paid to DNR conservation officers pursuant to West Virginia Code § 20-7-1(i) is not "compensation" for purposes of retirement benefit calculation pursuant to West Virginia Code § 5-10-2(8). *Clark I*, 245 W. Va. at 514, 859 S.E.2d at 457. We then held that "West Virginia Code § 5-10-44 is a remedial statute that may be applied to correct an error in the Public Employees Retirement System . . . that occurred before July 1, 2015." Syl. Pt. 9, *Clark I*, 245 W. Va. at 510, 859 S.E.2d at 456. Based on the foregoing, we found that:

6

> [T]he Board has failed to act in a timely manner to correct system overpayments that resulted from the erroneous treatment of subsistence allowance payments as pensionable compensation. Consequently, the Board may not require *Respondents who have received overpayments from PERS due to that error* to repay those amounts. For the same reason – a lack of timeliness, as that term is found in § 5-10-44(e) – the Board may not prospectively adjust payments to *those retirant- and beneficiary-Respondents to whom annuity payments have already started*.

*Id*. at 526, 859 S.E.2d at 469 (emphasis added).

This Court's language is clear and limited: the Board did not act timely in correcting overpayments from the system to the already retired officers (or their beneficiaries). By its express wording, the holding of *Clark I* does not apply to the active and inactive officers, who are neither "retirants" nor "beneficiaries." The active and inactive officers do not have either a constitutional right or a contractual right to improperly calculated retirement benefits, even if they expected such benefits or relied on such improper calculation to their detriment. *See* Syl. Pt. 7, in part, *Booth v. Sims*, 193 W. Va. 323, 327, 456 S.E.2d 167, 171 (1995) ("By meeting certain eligibility requirements, a public employee acquires a right to payment under a pension plan. For any employee not yet eligible for payment, this is a mere expectancy[.]"); *Myers v. West Virginia Consolidated Public Retirement Board*, 226 W. Va. 738, 754, 704 S.E.2d 738, 754 (2010) (per curiam) ("While Mr. Myers may have relied on the Board's erroneous representation [regarding service credit], the Board is statutorily bound by W. Va. Code § 5-10-44 to correct errors[.] . . . The statute does not limit this requirement for equitable reasons.").

7

To this point in *Clark I*, this Court specifically found that "the allowance is not, under the terms of PERS, pensionable compensation, nor has it ever been. Thus, no promise was made upon which [DNR's conservation officers] – active or retired – could have relied to their detriment regarding the allowance's status as pensionable compensation." *Clark I*, 245 W. Va. at 523 n.73, 859 S.E.2d at 466 n.73.

Moreover, the Board is required both to act in accordance with its fiduciary duties and to comply with the statutory mandate timely to correct overpayments into PERS of the improperly included subsistence allowance. Per the correction statute:

> (c) **Overpayments to the retirement system by an employer.** – When mistaken or excess employer contributions or other employer overpayments have been made to the retirement system, the board shall credit the employer with an amount equal to the overpayment, to be offset against the employer's future liability for employer contributions to the system. . . .

> (d) **Overpayments to the retirement system by an employee.** – When mistaken or excess employee contributions or overpayments have been made to the retirement system, the board shall have the sole authority for determining the means of return, offset or credit to or for the benefit of the individual making the mistaken or excess employee contribution of the amounts, and may use any means authorized or permitted under the provisions of section 401(a), et seq. of the Internal Revenue Code and guidance issued thereunder applicable to governmental plans. . . .

W. Va. Code § 5-10-44(c) and (d). Overlying both of these subsections is the general requirement of subsection (a) that:

> Upon learning of any errors, the board shall correct errors in the retirement system in a timely manner whether an individual, entity or board was at fault for the error with the

8

intent of placing the affected individual, entity and retirement board in the position each would have been in had the error not occurred.

W. Va. Code § 5-10-44(a). Of course, use of the term "shall" in a statute means that the agency to which the statute is directed must carry out the action described therein; it may not use its own discretion with regard to whether the described action should or should not be performed. *See* Syl. Pt. 4, *Am. Tower Corp. v. Common Council of City of Beckley*, 210 W. Va. 345, 557 S.E.2d 752 (2010) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." (citing Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd*, 171 W. Va. 445, 300 S.E.2d 86 (1982) and Syl. Pt. 1, *E.H. v. Matin*, 201 W. Va. 463, 498 S.E.2d 35 (1997))). Further, the correction statute does not require construction, because its language is clear and unambiguous. *See* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Thus, the correction statute not only requires the Board "to correct errors in the retirement system," but it also requires the Board to do so "in a timely manner." W. Va. Code § 5-10-44(a).

In *Clark I*, we noted that "the circuit court found that the Board did not act timely to correct the erroneous inclusion of the subsistence allowance in [the petitioners'] pensionable income, citing both W. Va. Code § 5-10-44(a) and (e)." *Clark I*, 245 W. Va. at 525 n.77, 859 S.E.2d at 468 n.77. However, subsection (e) of the correction statute applies

9

only to overpayments *from* the retirement system. *See* W. Va. Code § 5-10-44(e) (2015) ("If any error results in any member, retirant, beneficiary, entity or other individual receiving from the system more than he would have been entitled to receive had the error not occurred, the board shall correct the error in a timely manner.").[6] The circuit court relied upon this statute to find that the Board did not correct the erroneous inclusion of the subsistence allowance into the officers' pensionable income in a timely manner. This application was correct insofar as the circuit court applied it to "those retirant- and beneficiary-[petitioners] to whom annuity payments have already started." *Clark I*, 245 W. Va. at 526, 859 S.E.2d at 469. However, application of the timeliness requirement of subsection (e) to the active and inactive officers is incorrect, as those officers are not yet receiving retirement benefits from PERS. In other words, they have not received any overpayments *from* the retirement system; they have only made overpayments *to* the retirement system. Thus, the subsection of the correction statute that applies to the active and inactive officers is (d), not (e).[7]

---

[6] The Legislature amended subsection (e) in 2022 to add "upon learning of the error" in the first sentence so that it now reads, "If any error results in any member, retirant, beneficiary, entity or other individual receiving from the system more than he would have been entitled to receive had the error not occurred, the board, upon learning of the error, shall correct the error in a timely manner." Such amendment does not affect our opinion here.

[7] The overpayments by DNR are governed by subsection (c), but no question of the employer's overpayments was certified to this Court. The general timeliness requirement of subsection (a) applies to both subsection (c) and subsection (d).

Nothing in *Clark I* affects the application or operation of subsections (a), (c), and (d) of the correction statute to the active and inactive officers or to the DNR. This Court specifically "[did] not address the timeliness of other courses of corrective action. *See, e.g.*, W. Va. Code § 5-10-44(d) (2015) (pertaining to overpayments to the retirement system by an employee)[.]" *Clark I*, 245 W. Va. at 525 n.77, 859 S.E.2d at 468 n.77. Further, we explicitly limited our holding to "retirant- and beneficiary-[officers]." *Id.* at 526, 859 S.E.2d at 469. Thus, the holdings of *Clark I* do not mean that the subsistence allowance received by active and inactive officers must be included in calculating pensionable income.[8]

## B. Certified Question No. 2

The circuit court's second certified question asks, "[u]nder the facts of this case, is Petitioner entitled to recover reasonable attorneys' fees from Respondent Consolidated Public Retirement Board?" In response to this question, the circuit court answered, "Yes."

It is our view that this certified question does not pose a question of law for this Court to resolve, but instead asks us to apply the law to the facts of this case. This we cannot do. West Virginia Code § 58-5-2 provides that, "Any question of law . . . may, in

---

[8] The holding in *Clark I* did not, as Certified Question No. 1 seems to imply, say that the subsistence allowance received by the retired and beneficiary officers must be included in calculating pensionable income. To the contrary, this Court held in *Clark I* that inclusion of such pay was erroneous, but that because of the failure to correct the error in a timely fashion, the law would not permit the recoupment contemplated in subsection (e).

11

the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision[.]" This Court has long held that, "[u]nder [West Virginia] Code [§] 58-5-2, [it] has no jurisdiction to determine a certified question of fact." Syl. Pt. 1, *State v. Stout*, 142 W. Va. 182, 95 S.E.2d 639 (1956). *See also Preussag Int'l Steel Corp. v. March-Westin Co.*, 221 W. Va. 472, 476 n.2, 655 S.E.2d 494, 498 n.2 (2007) ("[T]his Court reviews *issues of law de novo* in certified question cases – not issues of fact.") (emphasis in original). The question of whether or not a litigant has a viable claim for attorney's fees in a particular matter is necessarily dependent upon facts as well as the law. Here, this Court does not have before it any factual findings of the lower court or its application of the law to those facts. Accordingly, this Court believes it would be imprudent to attempt to answer a question regarding whether attorney's fees may be awarded other than as part of normal appellate review of a final, appealable order of the circuit court. To do so would preempt the tried and true process of civil litigation. Thus, because this question does not present an issue of law, we must decline to answer it.

## CONCLUSION

Having considered the questions certified by the Circuit Court of Kanawha County, we answer them as follows:

1.  The West Virginia Supreme Court held in *West Virginia Consolidated [Public] Retirement Board v. Clark*, 245 W. Va. 510, 859 S.E.2d 453 (2021) that Respondent Consolidated Public Retirement Board failed to timely correct the inclusion of statutory subsistence pay in calculating the officers' pensionable compensation. Does this holding mean that the subsistence pay received by all retired ***and active*** DNR law enforcement officers as of the date of the mandate order issued on

12

July 14, 2021, must be included in calculating their pensionable income?

Answer:     No

2.      Under the facts of this case, is Petitioner entitled to recover reasonable attorneys' fees from Respondent Consolidated Public Retirement Board?

Answer:     Having concluded that this question does not present an issue of law, we decline to answer it.

Certified Question Answered.

13